IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ISIDORE CORWIN AND BONNIE CORWIN | |
| Plaintiffs, | |
| v. | Civil Action No. 04-1499 (GMS) |
| B'NAI B'RITH SENIOR CITIZEN HOUSING, INC. AND LYNNE ROTAN | |
| Defendants. | |

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

I.     INTRODUCTION

On November 23, 2005, an amicable settlement agreement was reached in this case following an all-day mediation conference with Magistrate Judge Thynge. At the conclusion of the mediation conference, the terms of the settlement agreement, as well as the explicit endorsement of those terms by all parties and their respective counsel, were transcribed by a court reporter and later made part of the record in this case. DI 36.

II.     BASIS FOR DEFENDANTS' ORIGINAL MOTION TO ENFORCE

On December 1, 2005, more than a week after the settlement agreement was reached, Plaintiffs attempted to repudiate the agreement for reasons which included allegations that they had received ineffective counsel[1] and because, "in retrospect," they had "changed their minds." D.I. 35. As a result, on December 2, 2005, Defendants moved this Court for an Order enforcing the settlement agreement citing, among other cases, *Liberate Technologies L.L.C. v. Worldgate Communications, Inc.*, 133 F.Supp.2d 357 (D.Del. 2001) which authorizes such an order under these circumstances.

---

[1] Plaintiffs' allegation of ineffective counsel was addressed in "Former Counsel of Plaintiffs' Response to Plaintiffs' December 1, 2005 Correspondence to Court" filed under seal on January 19, 2006.

On December 8, 2005, Plaintiffs responded to Defendants' motion.  In their response, Plaintiffs admitted that they and their counsel had agreed to a settlement on November 23, 2005, but went on to explain that, "in retrospect" they "realized they had agreed too soon."  D.I. 39.  Notably, Plaintiffs did not challenge the authority of this Court to grant Defendants' motion, nor did they set forth any rational factual, legal or equitable reason why the November 23 settlement agreement should not be enforced by this Court.

Equally as important, Plaintiffs failed to explain why the precise terms to which they had given their explicit approval could not be enforced, or how enforcement of those terms would unfairly disadvantage them.  In short, Plaintiffs presented no rational factual, legal or equitable ground which might justify nullification of the agreement.  See *Liberate Technologies LLC  v Worldgate Communications, Inc*., supra. (claims of inadequate representation and undue prejudice by the non-moving party rejected in light of the clear intention of the parties to settle all claims and the court's inherent authority to enforce settlement agreements).  In stark contrast to Plaintiffs' assertions, Defendants presented their own evidence showing that they had already begun complying with their obligations under the agreement and that failing to enforce the agreement at that point simply because Plaintiffs had changed their minds would unfairly prejudice them.  *See* Schlecker Declaration, Exhibit A to Motion to Enforce Settlement Agreement.  D.I. 40.

III.    THE AGREEMENT REACHED AT THE JANUARY 25TH STATUS HEARING
        AND ITS AFTERMATH

On January 25, 2006, this Court convened a hearing in order to discuss the status of the case.  As the Docket Entry for that day indicates, at the conclusion of this hearing the parties once again "agreed on terms and conditions" that would settle this case.  The Court ordered that Defendants' counsel draft a stipulated agreement of dismissal and that he forward his draft to Plaintiffs by January 27, 2006.  In turn, the Court ordered Plaintiffs to respond to counsel's draft by February 1, 2006, and further ordered counsel for Defendants to submit the signed stipulated agreement by close of business on February 6, 2006.

Pursuant to the above Order, on January 26, 2006, counsel for Defendants sent Plaintiffs a draft stipulation of settlement and notice to residents whose terms were consistent with the agreement the parties had reached on November 23, 2005 and January 25, 2006. A copy of this draft stipulation of settlement is attached hereto as Exhibit A.[2] A copy of the draft notice to residents is attached hereto as Exhibit B. On January 27 Plaintiffs sent Defendants' counsel a letter containing a lengthy list of changes they wanted counsel to make to the agreement and notice. A copy of Plaintiffs' letter is attached hereto as Exhibit C.

On January 29, Plaintiffs wrote to counsel for Defendants again. In this letter, Plaintiffs stated they

> were very uncomfortable with one area of discussion and conclusion we came to in the U.S. District Court Judge's presence regarding settlement on January 25, 2006. I am hoping we can resolve this resentment we have [regarding] <u>a very unfair conclusion</u> we all came to that day... Emphasis in original.

According to the above letter, the issue causing Plaintiffs' continuing resentment was "the appearance of one religion [Jewish] dictating the faith of the BBH building...." To alleviate their "resentment," Plaintiffs asked Defendants to "seriously reconsider the stipulation agreement and letter to tenants...." A copy of Plaintiffs' January 29 letter is attached hereto as Exhibit D.

With any realistic hope of finally and amicably resolving this case according to the previously agreed-to terms beginning to fade, on January 30 counsel for Defendants sent Plaintiffs an original and one copy of a "final Stipulation of Settlement and Notice to Residents." Copies of those documents are attached hereto as Exhibits E and F, respectively. In that letter counsel for Defendants informed Plaintiffs that Defendants had incorporated many of the changes Plaintiffs had requested, but that many other

---

[2] In fact, the draft agreement counsel for Defendants sent to Plaintiffs on January 26 was virtually identical to the working draft counsel for Defendants and former counsel for Plaintiffs had exchanged shortly after the mediation conference.

changes Plaintiffs had requested could not be made because they did not comport with the terms of the settlement agreement the parties reached on November 23, 2005 and again on January 25, 2006. A copy of counsel's January 30 letter is attached hereto as Exhibit G.

By fax dated January 31 Plaintiffs informed counsel for Defendants that they would not sign the above agreement. Plaintiffs also requested that counsel make a number of additional changes to the agreement, the most noteworthy one was Plaintiffs' request to turn the settlement agreement into what Plaintiffs termed a "settlement agreement in part." Plaintiffs' January 31 letter also informed Defendants' counsel that they would not sign a final agreement due to their continuing objection over their inability to display a nativity scene in the common area of B'nai B'rith House – a matter that had been discussed and debated at length, both in mediation and before this Court, and, most important of all, a matter about which agreement had been reached twice before. Lastly, in what any reasonable person would construe as yet one more attempt to repudiate their agreement to settle, Plaintiffs stated that they would "appeal" the settlement, file an objection to the magistrate judge's "report," or file another lawsuit in federal court if their demands regarding the nativity scene (in addition to a host of other demands) were not met. A copy of Plaintiffs' January 31 letter is attached hereto as Exhibit H.

In one last attempt to comply with this Court's order to obtain a signed settlement agreement from Plaintiffs, counsel for Defendants sent Plaintiffs a letter on February 1, 2006. A copy of this letter is attached hereto as Exhibit I. In this letter counsel summarized the position Plaintiffs had taken since the mediation conference and status hearing – a position that yet again was in direct conflict with their agreement to settle. Counsel's letter also explained to Plaintiffs that because of their unwillingness to abide by any of their prior agreements, that a joint stipulation of settlement no longer seemed possible. Counsel for Defendants also explained that in order to meet the Court's deadline to submit a jointly signed stipulated agreement by close of business February 6, 2006, that counsel would reinstate his clients' Motion to Enforce Settlement Agreement

4

if a favorable, unconditional reply was not received from Plaintiffs by 4:00 p.m., Friday, February 3, 2006.  Lastly, counsel informed Plaintiffs that because of their unjustified refusal to settle despite their explicit agreement to do so on no less than three prior occasions,[3] and because of their cynical disregard for the good faith efforts of Judge Sleet, Magistrate Judge Thynge, Defendants and their counsel as well as Plaintiffs' former counsel, that Defendants would  also move this court for an order assessing costs and reasonable attorney's fees against them for costs and fees that accrued since December 1, 2005, the time Plaintiffs first attempted to repudiate the agreement reached at mediation.

## IV.    EVENTS PROMPTING THE RENEWAL OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Any realistic hope for an amicable settlement in this matter – any possibility that Plaintiffs could be taken at their word – ended on February 2, 2006 with their submission of a document entitled "Plaintiffs' Filed Objection to Magistrate's Report."  In this document Plaintiffs reiterated their objection to the "Magistrate Judge's Report," stated their "desire [for] further review on these certain matters…," and took issue once again with the draft settlement agreements and notices to residents Defendants counsel sent to them between January 26 and January 30, 2006.  A copy of Plaintiffs' submission is attached hereto as Exhibit J.

As if to underscore their mendacity and capriciousness, Plaintiffs now seek to introduce to the equation a copy of a letter they received on February 2, 2006 from Senator Carper.  The letter to Senator Carper, written by Stephen Nesbith, an assistant secretary at HUD, was based on a letter Plaintiffs sent to the Senator on November 30, 2005.[4]  To the extent these two letters have any value at all in this litigation, they simply

---

[3] Once before the Delaware Fair Housing Agency, once before Magistrate Judge Thynge and once before this Court.

[4] That Plaintiffs never intended to keep their word is illustrated by the fact that their letter to Senator Carper was mailed one week after the mediation conference and two full

confirm Plaintiffs' persistently false and insoluble complaints of "unequal treatment" at B'nai B'rith House.[5]

V.    <u>CONCLUSION</u>

Defendants are well aware that every possible consideration should be (and indeed has been) accorded to Plaintiffs in this case. But at the end of the day, even pro se litigants must be held accountable for their actions and to certain elementary rules of conduct that govern our society in general, not just in a court of law. Regrettably, for reasons only they can know, Plaintiffs in this case are unwilling or unable to honor their own commitments, accept responsibility for their own actions or act responsibly and honorably. Because of Plaintiffs' unreasonable and unjustified behavior, Defendants have been forced to pay for costs and attorneys fees, and to devote considerable time and energy away from the business of running a non-profit federally assisted housing facility open to all qualified applicants, to enforce an agreement that was reached months ago. And in the midst of all of this, Plaintiffs are still eager to proclaim their "love" for Defendants' property and their unwillingness even to consider moving elsewhere. In short, justice will not be served in this case until an Order enforcing the settlement agreement originally reached among the parties and their counsel at the mediation conference on November 23, 2005, later ratified by the parties at the status hearing on January 25, 2006, is entered.[6]

---

months before the very same agreement was ratified for a second time at the status hearing held before this Court on January 25, 2006.

[5] While Defendants believe Assistant Secretary Nesbith's views have no relevance in these proceedings, it is interesting to note that Mr. Nesbith's position is Assistant Secretary for Congressional and Intergovernmental Relations; he is not the Assistant Secretary for Fair Housing and Equal Opportunity, the office within HUD that actually enforces the matters on which Mr. Nesbith opines.

[6] A proposed Order Confirming Settlement is attached hereto as Exhibit K. The Court may notice that one change has been made to the agreement Defendants last sent to Plaintiffs; namely, the agreement has been amended so that the $3,000 payment to Plaintiffs for their out of pocket expenses has been moved to March 17, 2006 and that the

Respectfully submitted,

BUCHANAN INGERSOLL PC

*/s/ Thad J. Bracegirdle*
David E. Wilks (I.D. # 2793)
Thad J. Bracegirdle (I.D. # 3691)
1007 North Orange Street, Suite 1110
Wilmington, Delaware 19801
Telephone: (302) 428-5500

And

WILLIAMS & EDELSTEIN, P.C.
(formerly Coughlin, Kitay & Edelstein, PC)
Steven J. Edelstein
7742 Spalding Drive, Suite 478
Norcross, GA 30092
Office Telephone: (770) 840-8483 ext. 206
Fax: (770) 840-9492

Admitted Pro Hac Vice

Attorneys for Defendants

Dated:  February 6, 2006

---

amount has been changed to $2,999.00 according to Plaintiffs' wishes so that they will not run afoul of HUD's rent subsidy certification requirements.