# EXHIBIT F

## Exhibit A

## NOTICE TO ALL RESIDENTS OF B'NAI B'RITH HOUSE

During the past holiday season, many of you noticed a number of changes taking place in B'nai B'rith House relative to religious displays and religious services in the building.  Many of you are also aware that B'nai B'rith House has been involved in a lawsuit brought by two of our residents who claimed that we discriminated against them on the basis of their religion.  **We are happy to report that this lawsuit has been amicably settled.**

While waiting for the settlement to become final, B'nai B'rith House decided to begin making some changes immediately, partly in reliance on the settlement agreement but also because we wish to continue our commitment to ensuring that the fair housing rights of every resident in this building are fairly recognized and respected.

As a result, B'nai B'rith House has implemented the following policies and procedures, which will be made a part of the House Rules in due course.

1. Religious items of any kind, including symbols, displays, magazines and literature, will not be permitted in any of the common areas.

2. Religious services will not be permitted in any of the common areas.  However, during the Christmas and Hanukah seasons, BBH will continue to allow residents to display a Christmas tree and Menorah along with other non-religious seasonal decorations.

3. Announcements of religious services will continue to be permitted on the BBH bulletin board and in its newsletter but will be prohibited in any other common areas.

4. Residents who wish to conduct religious services on the premises will be permitted to conduct such services in the Potter Auditorium only.   BBH will continue to allow religious services to be conducted in the Potter Auditorium in a manner that ensures equal access to residents of all religions.

5. BBH will continue to accept for publication in our newsletter all announcements of religious services in the Potter Auditorium. Residents will also continue to be allowed to place announcements of religious services in resident cubbyholes.

6. BBH will continue to allow residents to display religious symbols and images of their choice (Mezuzahs, Crucifixes, etc.) on the outside of their apartment doors and on their individual mailboxes.

7. *Religious items used in the performance of religious services will be permitted in the Potter Auditorium during said services and will either be covered or removed from public view at the conclusion of the service or as soon as safety permits.*

8. *Resident's who wish to display symbols of faith during their holidays will be permitted to sign up with the BBH office to display said items but will again follow the provisions of the paragraph above.*

Lastly, it is important that we respect the dignity of all other residents in our community, especially those with whom we disagree. It is also important that each and every resident of BBH understand that federal and state laws make it illegal to harass or retaliate against anyone. We cannot overemphasize how important it is for all residents to avoid any conflict or potential conflict that could be construed as harassment or retaliation.

If you have any further questions or concerns about this matter, please feel free to contact me privately.

Lynne Rotan, Manager

Date:

# EXHIBIT G

THE LAW FIRM OF

# COUGHLIN, KITAY & EDELSTEIN

A PROFESSIONAL CORPORATION

7742 SPALDING DRIVE
SUITE 478
NORCROSS, GEORGIA 30092
770.840.8483 • FAX 770.840.9492

KATHELENE WILLIAMS COUGHLIN*
THERESA L. KITAY±
STEVEN J. EDELSTEIN*

4750 LINCOLN BOULEVARD
SUITE 483
MARINA DEL REY, CA 90292
310.578.9134 • FAX 770.454.0126

<u>VIA FEDEX OVERNIGHT</u>

January 30, 2006

Mrs. Bonnie Corwin
B'nai B'rith House
8000 Society Drive, Apt. 608
Claymont, DE 19703

Dear Mrs. Corwin:

Enclosed for Mr. Corwin's and your signature is the final Stipulation of Settlement and Notice to Residents.

You will see from these documents that my clients incorporated a number of the changes you suggested we make to the draft agreement and notice I faxed to you last week.  You will also see that many of the changes you suggested could not be made because those changes do not comport with the terms of the agreement we reached with the magistrate judge on November 23, 2005 and with Judge Sleet at the hearing on January 25, 2006.

In order to conclude this litigation, please sign your names on Plaintiffs' signature page, then mail that page back to me in the enclosed, self-addressed stamped envelope.  I have included an extra copy of both documents for your files.  After I receive your executed signature page, I will attach it and an executed Defendants' signature page to the agreement and notice and file those with the court.  You will receive a copy of the entire agreement and notice after they are filed.

Thank you again for your cooperation.

Very truly yours,

Steven J. Edelstein
For the Firm

_____

* ADMITTED IN GEORGIA
± ADMITTED IN GEORGIA AND CALIFORNIA

# EXHIBIT H

# FAX 770-840-9492

# Cover Sheet

Pages: Including cover sheet – 12   *3*

TO:
**ATTORNEY EDELSTEIN**
**7742 SPALDING DRIVE, SUITE 478**
**NORCROSS, GEORGIA 30092**
**FAX 770-840-9492**

FROM:   *ISIDORE AND BONNIE CORWIN*
TELE/FAX: 302-798-5116

DATE: JANUARY 27, 2006   *31*

JANUARY 31, 2005

ISIDORE AND BONNIE CORWIN
8608 SOCIETY DRIVE
BNAI BRITH HOUSE
CLAYMONT, DELAWARE 19703-1749
TELE/FAX 302-798-5116

RE: CORWIN VS. BNAI BRITH SENIOR HOUSING & LYNNE ROTAN

DEAR MR EDELSTEIN,

WE RECEIVED BY MAIL WHAT YOU SEE AS THE FINAL DRAFT OF OUR LAWSUIT'S
STIPULATION AND THE FINAL DRAFT OF THE LETTER TO THE BBH TENANTS, ASKING FOR
OUR SIGNATURE. WE DO NOT AGREE WITH THE DRAFTS.    WITH A FILING DEADLINE OF
FEBRUARY 6, 2006, 4:30 PM, AT U.S. DISTRICT COURT IN DELAWARE, AND WITH TODAY'S
DATE BEING JANUARY 31, 2006, PLEASE, IF YOU WOULDN'T MIND, INCORPORATING INTO
THE FINAL DRAFTS THESE NECESSARY CHANGES, (SAID CHANGES DUE TO YOUR TO
YOUR OFFICE BY WEDNESDAY, FEBRUARY 1, 2006) AND WITH OUR CONTINUING EFFORT
TO WORK TOGETHER AGAIN WITH YOU ON THESE CHANGES.

## NECESSARY CHANGES TO STIPULATION BEFORE FINAL :
P.1; LINE 1: AMICABLY SETTLED THIS COMPLAINT, *IN PART.* *
P.1; LINE 9: POSTERS, DECORATIONS, AND *LITERATURE (OR SYMBOLS.* REMOVED).
P.1; LINE 10: FIRST SENTENCE STANDS ALONE.
P.1; LINE 11, 12, 13: *OMIT.* *
P.1; LINE 14 NEEDED: *THE FRAMED HEBREW WRITING IN THE LOBBY THAT STATES "WHEN WE
ENTER INTO THE MONTH OF ADAR, WE INCREASE IN JOY", WILL BE REMOVED.*
P.2; LINE 6: FOUNDERS OF BBH *AND PLACED IN A NON-COMMON AREA OF THE BLDG*[1] .
P.2; LINE 22: RELIGIOUS *EVENTS (OMIT SERVICES )*[2].
P.3; LINE 1: *HOWEVER (OMITTED).*
P.3; LINE 2: (SEPARATE SENTENCE). *TEMPORARY SIGNS FOR ANY RELIGIOUS SERVICE MAY
BE USED TO ........*
P. 3; LINE 7: *PORTABLE ALTER FOR MASS OR COMMUNION SERVICE,* WILL BE ENCLOSED...
P. 3; LINE 14: THEIR BALCONY WALL, *AND PLAINTIFFS' OTHER  FURNISHINGS ON THEIR
BALCONY, AS WELL AS ALL BBH TENANTS' FURNISHINGS ON THEIR BALCONY, WILL BE
PERMITTED TO REMAIN, IF PLACED THERE PRIOR TO THE COMPLAINT DATE OF THIS
LAWSUIT:*[3] *(DECEMBER 7, 2004)*
P.3; LINE 22 NEEDED: *DEFENDANT ROTAN AGREES TO PROFESSIONAL BEHAVIOR,  AS THE
MANAGER OF THE BBH, AND IN HER CONTACTS WITH PLAINTIFFS/TENANTS.*[4]

---

[1] WE AGREED TO PLACEMENT, PER MARTIN & EDELSTEIN ON NOV 23, 2005, BUT NO DESTINATION DECIDED AND
THIS IS WHERE WE BELIEVE IT SHOULD GO, PER GOOGLE MAZZUZAH INFORMATION FAXED TO YOU RECENTLY,
IN A NON-COMMON AREA.
[2] TESTIMONY WAS ABOUT SEDER MEAL INVITATION PERMITTED BY BBH IN CUBBYHOLES PER DEPOSITION OF
NOVEMBER 4, 2005.
[3] THIS AGREEMENT WAS MADE BETWEEN EDELSTEIN AND FERRARA AT THE NOV 4, 2005 MEDIATION
CONFERENCE IN THE PRESENCE OF ALL PARTIES AND JUDGE THYNGE.
[4] THIS STIPULATION WAS AGREED TO BY EDELSTEIN AND CORWIN AT THE JANUARY 25, 2005 HEARING TO BE
APART OF AGREEMENT IN LIEU OF AN INJUNCTION FOR MRS ROTAN.

### SECOND PAGE, STIPULATION CHANGES:

<u>P. 4; LINE 2:</u> *PLEASE CHANGE THE CHECK AMOUNT TO $2,999.00; IN A CASHIERS' CHECK.*
<u>P. 4; LINE 3:</u> *PLEASE ISSUE CHECK ON MARCH 17, 2006, SINCE SETTLEMENT HAS BEEN PUSHED BACK AND WE CANNOT ACCEPT A CHECK EARLIER, DUE TO CIRCUMSTANCES BEYOND OUR CONTROL.*

\*NOTE: WITH RESPECT TO OMITTING LINE 11, 12, AND 13, P.1 AND THE INSERTION OF THE WORDS "IN-PART" ON LINE 1, P.1, IN THE LAWSUIT STIPULATION, AND REGARDING THE ISSUE OF NEUTRAL ACCEPTED BUT NO RELIGIOUS ITEMS BEING ACCEPTED BY BBH IN THE BBH LOBBY AT CHRISTMAS AND HANAKAH, WE OBJECT TO THE MAGISTRATE'S REPORT ON THIS ONE ISSUE AND SINCE WE PROPOSED THE IDEA ONCE AGAIN IN A RECENT FAX OF JANUARY 29, 2006 TO THE DEFENDANTS, ASKING THEM TO PERMIT RELIGIOUS ITEMS IN THEIR HOLIDAY SETTING IN THE LOBBY (FOR INSTANCE, PLAINTIFFS' NATIVITY SCENE), AND ACCORDING TO <u>LYNCH V. DONNELLY</u> (WITH CASE LAW QUOTED TO US BY JUDGE SLEET INCLUDING A RECENT SUPPORTIVE DECISION BY JUSTICE O'CONNOR), AND WITH NO AFFIRMATIVE RESPONSE FROM THE DEFENDANTS TO THAT FAX, WE HAVE DECIDED TO SIGN THE SETTLEMENT, <u>ONLY IN PART,</u> (INCLUDING THE ABOVE NECESSARY CHANGES WE CITE ABOVE), WITH THE OMISSION OF THIS NEUTRAL ITEMS BUT NO RELIGIOUS ITEMS IN LOBBY PERMITTED BY BBH AT CHRISTMAS OR HANAKAH) IN THE FINAL STIPULATION, THIS ISSUE WOULD NOT BE SUBJECT TO THE BAR OF PREJUDICE. WE WISH TO HAVE FURTHER TALKS WITH DEFENDANTS ON THIS ISSUE WITH AN ACCEPTABLE RESOLUTION. OR LITIGATE THE ISSUE FURTHER. WE WILL TIMELY FILE OUR OBJECTIONS TO THE MAGISTRATE'S REPORT TO THE COURT, IDENTIFYING THIS ONE ISSUE WE OBJECT TO, AND ON WHICH WE DESIRE FURTHER REVIEW.

### NECESSARY CHANGES TO NOTICE TO ALL RESIDENTS OF B'NAI B'RITH HOUSE

<u>P.1; LINE 6:</u> AMICABLY SETTLED THIS COMPLAINT, *IN PART.* (SEE NOTE ABOVE)
<u>P.1; LINE 14:</u> LITERATURE, *BOOKS, POSTERS, AND DECORATIONS* WILL NOT BE ......
<u>P.1; LINE 15, 16, 17, 18:</u> *OMIT.* (SEE NOTE ABOVE)
<u>P.1; LINE 19:</u> ANNOUNCEMENT OF *WEEKLY* SERVICES
<u>P.2; LINE 3:</u> RELIGIOUS EVENTS (OMIT *SERVICES*)
<u>P.2; LINE 10, 11, 12:</u> *OMIT.* (SEE NOTE ABOVE)
<u>P.2; LINE 14:</u> COMMUNITY, *ESPECIALLY THOSE WITH WHOM WE DISAGREE* (OMIT)[5]
<u>P.2; LINE 18:</u> ADDITIONALLY, THE FAIR HOUSING LAWS SPECIFICALLY PROHIBIT DISCRIMINATION AND INTIMIDATION OF PEOPLE IN THEIR OWN HOMES.

*Bonnie Corwin*

---

[5] IN YOUR LETTER OF JANUARY 30, 2006, YOU STATED THAT THE CHANGES WE SUGGEST COULD NOT BE MADE BECAUSE THOSE CHANGES DO NOT COMPORT WITH THE TERMS OF THE AGREEMENT WE REACHED ON NOVEMBER 23, 2005 AND JANUARY 25, 2006. THIS LAST PARAGRAPH YOU AUTHORED WAS NEVER AUTHORIZED BY ANY COURT

# EXHIBIT I

THE LAW FIRM OF

# WILLIAMS & EDELSTEIN

A PROFESSIONAL CORPORATION
7742 SPALDING DRIVE
SUITE 478
NORCROSS, GEORGIA 30092
770.840.8483 • FAX 770.840.9492

KATHELENE COUGHLIN WILLIAMS
Email: kathi@fairhouse.net
Tel: 770.840.8483 ext. 203

STEVEN J. EDELSTEIN
Email: sedelstein@fairhouse.net
Tel: 770.840.8483 ext. 206

*VIA FAX ONLY-302.798.5116*

February 1, 2006

Mrs. Bonnie Corwin
B'nai B'rith House
8000 Society Drive, Apt. 608
Claymont, DE 19703

Dear Mrs. Corwin:

Because it appears that we will not be able to reach agreement on a settlement document, I want to summarize what has transpired since our status hearing before Judge Sleet on January 25, 2006, and to give you one final opportunity to sign the final draft agreement and notice to residents that I sent you on January 30, 2006 before reinstating my clients' motion to enforce settlement.

• On January 26 I sent you a draft settlement agreement and notice to residents whose terms were consistent with the agreement the parties reached with the assistance of both Magistrate Judge Thynge and Judge Sleet.

• On January 27 you sent me a list containing a number of changes you wanted me to make to the agreement and notice.

• On January 29 you sent me a letter in which you stated that you

>  were very uncomfortable with one area of discussion and conclusion we came to in the U.S. District Court Judge's presence regarding settlement on January 25, 2006. I am hoping we can resolve this resentment we have [regarding] a very unfair conclusion we all came to that day...

According to your letter, the issue causing your resentment is "the appearance of one religion [Jewish] dictating the faith of the BBH building...." To alleviate your

Mrs. Bonnie Corwin
February 1, 2006
Page 2

resentment, you asked that my clients "seriously reconsider the stipulation agreement
and letter to tenants...."

- On January 30 I sent you (via FedEx Overnight Service) an original and one copy of
  what I termed a "final Stipulation of Settlement and Notice to Residents" which I asked
  you to sign and return to me in the stamped, self-address envelope I enclosed for that
  purpose. In my letter I informed you that my clients had incorporated many of the
  changes you requested, but also informed you that many of the changes you requested
  could not be made because they did not comport with the terms of the agreement the
  parties reached with the magistrate judge on November 23, 2005 and with Judge Sleet
  at the status hearing on January 25, 2006.

- By fax dated January 31 you informed me that you would not sign the agreement I sent
  you. You also requested a number of additional changes; the most noteworthy change
  is your request to turn what was intended to be a final agreement into what you termed
  a "settlement agreement **in part.**" You also explained that you would not sign the
  agreement due to your continuing objection over the residents' inability to display a
  nativity scene in the common area. You also stated that you wish "to have further talks
  with Defendants on this issue." Lastly, you raised the possibility of appealing the
  settlement, filing an objection to the magistrate judge's "report," or filing another
  lawsuit in federal court if your demands were not met.

Once again you have proven to be disingenuous and untrustworthy. And I cannot in good
conscience spend any more time and effort trying to settle this matter with you. I will,
however, give you one last opportunity to sign the agreement I sent to you on January 30.

In order to meet the Court's deadline to submit a signed agreement by close of business
February 6, 2006, if I do not receive a favorable, unconditional reply from you by 4:00
p.m., Friday, February 3, 2006, I will reinstate my clients' motion to enforce settlement. I
also want you to know that because of your unjustified refusal to settle this matter despite
your explicit agreement to do so on no less than three prior occasions, and because of your
cynical disregard for the good faith efforts of Judge Sleet, Magistrate Judge Thynge, my
clients and myself as well as your former counsel, I will move the court for an order
assessing costs and reasonable attorney's fees against you that have accrued beginning
December 1, 2005, the time you first attempted to repudiate the agreement reached at
mediation.

Very truly yours,

Steven J. Edelstein
For the Firm

WILLIAMS & EDELSTEIN, P.C.

# EXHIBIT J

# FAX 770-840-9492

# Cover Sheet

Pages: Including cover sheet - 10

TO:
ATTORNEY EDELSTEIN
7742 SPALDING DRIVE, SUITE 478
NORCROSS, GEORGIA 30092
FAX 770-840-9492

FROM:   *ISIDORE AND BONNIE CORWIN*
TELE/FAX: 302-798-5116

DATE: FEBRUARY 2, 2006

---

*CORWIN V. BNAI BRITH SENIOR HOUSING, INC. AND LYNNE ROTAN*
U.S. DISTRICT COURT, WILMINGTON, DELAWARE, C.A. NO. 04-1499,
DATE OBJECTION FILED: FEBRUARY 2, 2006
*HAND-CARRIED TO CLERK'S OFFICE BY PLAINTIFF BONNIE CORWIN, PRO SE*

**PLAINTIFFS' FILED OBJECTION TO MAGISTRATE'S REPORT**

PLAINTIFFS HEREBY FILE THEIR SPECIFIC OBJECTION TO THE MAGISTRATE'S REPORT BETWEEN THE PARTIES IN THE ABOVE NAMED CIVIL ACTION; (SAID MAGISTRATE'S REPORT BEING FORMULATED FROM TWO SEPARATE U.S. DISTRICT COURT CONFERENCES OF NOVEMBER 23, 2005 AND JANUARY 25, 2006); SCHEDULED TO GO INTO ORDER ON FEBRUARY 6, 2006.

PLAINTIFFS OBJECT TO THE MAGISTRATE'S REPORT WITH RESPECT TO SPECIFIC POINTS THAT ARE CLEARLY CONTRARY TO HUD LAW, ACCORDING TO U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT ASSISTANT SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS LETTER OF FEBRUARY 1, 2006 TO U. S. SENATOR THOMAS R. CARPER (ENC.)

THE FEBRUARY 1, 2006 LETTER FROM HUD ASSISTANT SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS, STEPHEN B. NESMITH, (PLAINTIFFS' COPY RECEIVED ON FEBRUARY 1, 2006, IN RESPONSE TO PLAINTIFFS' CONCERNS (ENC.)), STATES 1a) THAT BNAI BRITH SENIOR HOUSING CAN PROVIDE SERVICES AT THE BBH (THE HUD LETTER DOES NOT CONFINE THE SERVICES TO ONE PARTICULAR ROOM) AND BBH DOES NOT HAVE TO REMOVE ANY OF RELIGIOUS SYMBOLS, ART, ICONS, SCRIPTURES, ETC.; CONTRARY TO THE MAGISTRATE'S REPORT; 1b) WHEN BNAI BRITH SENIOR HOUSING PERMITS ONE CONGREGATION TO MAINTAIN A FIXED DISPLAY....IT MUST ALSO ALLOW THE SAME OPPORTUNITY TO HAVE A FIXED DISPLAY TO OTHER RESIDENTS; CONTRARY TO THE MAGISTRATE'S REPORT WHICH PROVIDES ONLY A ROLL-AWAY OPPORTUNITY DISPLAY FOR THE CATHOLIC FAITH IN THEIR AUDITORIUM; 2) IF BNAI BRITH SENIOR HOUSING ONLY PERMITS ONE RELIGIOUS CONGREGATION TO HAVE ITS MAILING ADDRESS AT THE HOUSING CITE (MACHZIKE HADAS CONGREGATION) PER MAGISTRATE'S REPORT ADOPTED AT THE STATUS HEARING CONFERENCE; IT IS CONTRARY TO THE FEBRUARY 1, 2006 HUD STATEMENT WHERE THE OWNER MUST PERMIT OTHER RESIDENT ORGANIZATIONS TO USE THE MAILING ADDRESS AS WELL; 3) WHEN BNAI BRITH SENIOR HOUSING PROVIDES LOBBY DISPLAYS OF VARIOUS SEASONAL DECORATIONS, INCLUDING SOME JEWISH RELIGIOUS DECORATIONS (MENORAH, MEZUZAH AND A STAR OF DAVID)...(A REINDEER FIGURE AND A SNOWMAN), BUT DOESN'T ALLOW RESIDENTS TO DISPLAY A CRÈCHE OR OTHER CHRISTIAN RELIGIOUS OBJECTS IN THE LOBBY IN DECEMBER PER MAGISTRATE'S REPORT; IT IS CONTRARY TO THE HUD FEBRUARY 1, 2006 STATEMENT WHERE ONCE THE OWNER HAS PERMITTED SOME RELIGIOUS DECORATIONS, IT MUST PROVIDE AN EQUAL OPPORTUNITY TO DISPLAY HOLIDAY DECORATIONS TO ALL RESIDENTS. (ALSO SEE 3RD CIRCUIT COURT OF APPEALS ENCLOSURE.)

PLAINTIFFS, THEREFORE, DESIRE FURTHER REVIEW ON THESE CERTAIN MATTERS FOUND IN THE MAGISTRATE'S REPORT IN FINDINGS OF FACT; AND FURTHER EVIDENCE WITH THESE SPECIFIED FINDINGS (THOMAS V. ARN, 474 U.S.140; 106 S. CT. 466; 88 L. ED 2D 435; 1985 U.S. LEXIS 146; 54 U.S.L.W. 4032; 3 FED. R. SERV. 3D (CALLAGHAN) 436. PLAINTIFFS PRAY THERE IS ENOUGH MERIT IN OUR OBJECTION TO THE MAGISTRATE'S REPORT TO WARRANT CAREFUL CONSIDERATION AND EXPLANATION IN A FURTHER REVIEW OF THESE MATTERS AND AT THE REQUEST OF THE PLAINTIFFS (NORTHERN PIPELINE CO. V. MARATHON PIPE LINE CO., 458 U.S. 50, 77 (1982), QUOTING CROWELL V. BENSON, 285 U.S. 22, 51 (1932).

COPIES SERVED ON TO ALL PARTIES:  FEBRUARY 2, 2006                     ENC: 3



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-1000

ASSISTANT SECRETARY FOR CONGRESSIONAL
AND INTERGOVERNMENTAL RELATIONS

FEB - 1 2006

The Honorable Thomas R. Carper
United States Senate
2215 Federal Building
300 South New Street
Dover, DE 19904-6724

Dear Senator Carper:

Thank you for your letter of November 30, 2005, on behalf of your constituents, Isidore and Bonnie Corwin regarding their concerns about holiday and other religious displays in the B'nai Brith Senior Housing, where they rent an apartment. The B'nai Brith Senior Housing project in Claymont, Delaware is assisted with Section 8 funds from the Department of Housing and Urban Development.

First, the Corwins' letter discusses their landlord's earlier requests that they remove a crucifix from their rented apartment and attend mandatory meetings in the building. The Department responded to its matters in a September 10, 2004 letter to you indicating the value of the developing of house rules by owners of subsidized properties but not treating residents differently on the basis of several factors, including religion.

The Corwins now write that a Torah is stored in the building's auditorium and a candle is permanently displayed, draped between services. Conversely, a Roman Catholic resident organization has been permitted to use the auditorium but not allowed to use the storage area or permanently display any of its furnishings. The Department does not prohibit the display of religious symbols in assisted housing. Indeed, HUD regulations at 24 CFR 5.109 explicitly permit religious organizations "to provide services under a HUD program without removing religious art, icons, scriptures, or other religious symbols." However, the Department's implementation of First Amendment principles requires that all religions be treated equally. Under this implementation, if B'nai Brith Senior Housing permits one congregation to maintain a fixed display and utilize on-site storage, it must allow the same opportunity to other resident congregations. Depending on the facts of each case, questions under the Fair Housing Act might also be raised.

Second, the letter states that only one religious congregation is permitted to have its mailing address at the housing site. Assuming that the religious congregation is some entity other than the owner itself, as a matter of fundamental fairness consistent with the Fair Housing Act and the First Amendment, the owner must permit other resident organizations to use the mailing address as well.

2

Finally, the Corwin's letter indicates that in December, the owner of the building provided lobby displays of various seasonal decorations, including some Jewish religious decorations (including a menorah, mezuzah and a Star of David), some "generic" Christmas decorations (a Christmas tree with a five-point star) and some secular seasonal decorations (a reindeer figure and a snowman) but would not allow residents to display a crèche or other Christian religious objects in the lobby. According to Mr. and Mrs. Corwin, the owner said it would permit a crèche to be displayed in a side room. Again, under the First Amendment, the owner may not differentiate among the congregations based on religion. Once the owner has permitted some religious decorations, it must provide an equal opportunity to display holiday decorations to all residents. Additional information would be needed to determine if a Fair Housing Act issue is raised.

I hope this information is helpful to your constituents. If I can be of further assistance, please let me know.

Sincerely,

Stephen B. Nesmith
Assistant Secretary for Congressional
and Intergovernmental Relations

NOVEMBER 30, 2005

TO: THE HONORABLE THOMAS CARPER, U.S. SENATOR
2215 FEDERAL BUILDING
300 SOUTH NEW STREET
DOVER, DELAWARE 19904-6724

FROM: ISIDORE AND BONNIE CORWIN
8608 SOCIETY DRIVE
BNAI BRITH HOUSE
CLAYMONT, DE 19703, TELEPHONE/FAX 302-798-5116

RE: HOPEFUL STEVEN B. NESMITH'S DIRECTION IN OUR RELIGIOUS-BASED QUESTIONS
AT SECT 8 BNAI BRITH SENIOR HOUSING, CLAYMONT, DELAWARE, ASSISTANT
SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS, U.S.
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, WASHINGTON, DC 20410-1000

DEAR SENATOR CARPER,

AS CONSTITUENTS HERE IN THE STATE OF DELAWARE AND WITH PAST
CORRESPONDENCE TO YOU REGARDING OUR SECTION EIGHT LANDLORD REQUEST THAT
WE REMOVE OUR CRUCIFIX FROM OUR RENTED APARTMENT; AND OUR LANDLORD'S
CALLING OF MANDATORY MEETINGS IN OUR APT BUILDING, WE HAVE ALWAYS
APPRECIATED YOU FORWARDING OUR HUD-CONCERNS TO SECRETARY NESMITH. HE
HAS BEEN AN AUTHORITY TO US TOWARDS RESOLUTIONS. THANK YOU.

WE ARE HOPING THAT YOU COULD FURTHER FORWARD TO MR NESMITH THREE (3)
RELIGIOUS QUESTIONS CONCERNING OUR APT BUILDING. THANK YOU FOR HELPING US.

1) WITHIN OUR BUILDING, IS AN AUDITORIUM SIDE ROOM ON THE LOBBY FLOOR, WHERE
A JEWISH FAITH CONGREGATION HAS ITS SERVICES EVERY FRIDAY AND SATURDAY AND
ON ITS HOLY DAYS. ON THE AUDITORIUM RISER, THE CONGREGATION HAS THE TORA
HOUSED IN A LOCKED CABINET WITH A 24/7 VOTIVE LIGHT AT THE SITE OF THE TORA. IF
THE TORA AND CABINET HAVE A DRAPE OVER IT BETWEEN SERVICES, DOES IT'S
RELIGIOUS ESTABLISHMENT IN THE AUDITORIUM GO AGAINST HUD GUIDELINES?
(THE ROMAN CATHOLIC SERVICES HAVE ACCESS TO THE SAME AUDITORIUM FOR ITS
FRIDAY MORNING COMMUNION SERVICES, BUT HAS NOT BEEN GIVEN THE OPPORTUNITY
FOR FIXED FURNISHING OR TABERNACLE PLACEMENT. WE ARE ROMAN CATHOLIC).

2) CAN THIS SAME JEWISH CONGREGATION, THAT IS ESTABLISHED IN THE AUDITORIUM
WITH FIXED FURNISHINGS, HAVE IT'S MAILING ADDRESS AT THE SECTION 8 BNAI BRITH
HOUSE? IS THIS WITHIN HUD GUIDELINES? (NO OTHER FAITH HAS ITS ADDRESS HERE).

3) IN DECEMBER, BNAI BRITH DISPLAYS A MANURAH, A PROPOSED COMMEMORATIVE
MAZZUZAH FROM A DOORPOST, THE STAR OF DAVID AND NOISE MAKERS IN THE LOBBY
FOR HANAKAH. IT AFFORDS A GENERIC CHRISTMAS TREE, A 5-POINT STAR , A
REINDEER FIGURE AND SNOWMAN FIGURE FOR CHRISTIANS IN THE LOBBY. IT REFUSES
FOR A CRECHE TO BE PLACED UNDER THE GENERIC CHRISTMAS TREE (IN 2004, BBH
REMOVED A CRECHE FROM UNDER THE TREE AND THREW IT IN THE TRASH). BNAI BRITH
HOUSE WILL APPROVE A CRECHE DISPLAY IN A SIDE ROOM FOR THE CHRISTMAS
HOLIDAY, AWAY FROM THE LOBBY. IS THIS HOUSE RULE WITHIN THE HUD AND
SUPREME COURT GUIDELINES?

THANK YOU FOR CONSIDERING OUR QUESTIONS. (WE HOPE, IF POSSIBLE, THAT WE
COULD RECEIVE A RESPONSE BEFORE THE HOLIDAYS). *ISIDORE AND BONNIE CORWIN*

FROM : ISIDORE CORWIN          FAX NO. :302 798 5116          Feb. 02 2006 04:45PM P5

# Court of Appeals Upholds Nativity Scene and Menorah at City Hall in New Jersey

The U.S. Court of Appeals for the Third Circuit has upheld a municipal holiday display in front of Jersey City, New Jersey's City Hall. In a ruling filed Tuesday and released on Wednesday, a divided panel of the Court reversed a lower court and held that a display that includes, along with a creche and menorah, a santa and sleigh, various Kwanza symbols, and a Frosty the Snowman does not violate the separation of church and state. The display also included a sign calling attention to various other municipal cultural activities throughout the year that celebrate Jersey City's diversity. Under Mayor Bret Schundler, Jersey City has sponsored a variety of cultural offerings including a Hindu Festival of Lights parade, Ramadan events, and various other parades, exhibits, and ethnic celebrations. At the same time, the court declined to reopen an earlier decision in the case by a different three-judge panel that struck down a display of the menorah, creche and sign, but that lacked Frosty and the other secular items. Nevertheless, the Court went out of its way to cast doubt on the prior opinion. The lawsuit was filed by the ACLU in 1994.

Becket Fund President and General Counsel Kevin J. Hasson, who argued the case for Jersey City, applauded the decision. "The court's opinion goes a long way toward restoring common sense to the law of religious liberty," he said. "You can't weed religion out of the culture without uprooting the whole culture in the process," he added. Acknowledging that "it's a shame that these cases have to come down to Frosty the Snowman," Hasson said The Becket Fund would continue to press for further changes in the law.

The Becket Fund for Religious Liberty is a bipartisan and ecumenical public interest law firm that protects the free expression of all religious traditions.

1/27/2006 8:18 A

In The United States District Court
for the District of Delaware

Isidore Corwin and Bonnie Corwin
                          PLAINTIFFS,

            AGAINST
Bnai Brith Senior Housing, Inc.
and Lynne Rotan                              CIVIL ACTION
                          DEFENDANTS          04-1499
                                               (GMS)

_____

Certificate of Service

I, Bonnie Corwin, Pro se, hereby certify
that on February 2, 2006, I ~~faxed~~ the
                              carried
Plaintiffs' filed Objection to Magistrate's Report
with the Clerk of the Court, which will send
notification of such filing, and have also
faxed (1) one true & correct copy of
Plaintiffs' Filed Objections to Magistrate's Report
and the respective Certificate of Service to the
same via fax to:
   David Wilks, Esq.
   Buchanan Ingersoll, P.C.
   1007 N. Orange St., Suit 1110
   Wilmington, De 19801   Bonnie Corwin 2/2/06
8608 Society Dr. Claymont, De    BONNIE CORWIN

FROM : ISIDORE CORWIN                FAX NO. :302 798 5116              Feb. 02 2006 04:46PM P7

CC: JUDGE GREGORY M. SLEET, U.S. DISTRICT COURT OF DELAWARE

RE: PREPARATION OF FINAL STIPULATION DUE TO JUDGE GREGORY M. SLEETS CHAMBERS
ON FEBRUARY 6, 2006, AT U.S. DISTRICT COURT, WILMINGTON, DELAWARE, C.A. NO. 04-1499

DATED: FEBRUARY 2, 2006
DEAR MR EDELSTEIN, DEFENDANTS' BNAI BRITH SR HOUSING & LYNNE ROTAN COUNSEL:

ON JANUARY 25, 2006, THE LAST WORDS JUDGE SLEET GAVE TO ME IN MY
QUESTION, IF YOU AND I MIGHT NOT AGREE WHILE FORMULATING A LETTER TO BBH
TENANTS IN REGARD TO THE LAWSUIT, WAS AN AFFIRMATIVE ONE - THAT WE WOULD
HAVE NO PROBLEM; AND HERE WE HAVE ONE -YOU'RE JUMPING TO CONCLUSION, NAME
CALLING, AND GIVING ORDERS - IN A TONE WHICH I FIND UNACCEPTABLE AND
INAPPROPRIATE ESPECIALLY IN TELLING ME YOU WILL GIVE ME ONE FINAL
OPPORTUNITY TO SIGN A FINAL DRAFT, AND THAT I DON'T CONSIDER A FINAL DRAFT.

YOU AND I WERE WORKING ON DRAFTS, WITH MY FIRST SUGGESTIONS
REGARDING THE TENANT DRAFT TO YOU IN A LETTER OF JANUARY 26, 2006. ON THAT
SAME DATE, YOU SENT A DRAFT SETTLEMENT, BUT THE TERMS WERE NOT CONSISTENT
WITH THE AGREEMENT THE PARTIES REACHED. YOU FORGOT TO INCLUDE THE JEWISH
HEBREW WRITING FRAMING; THE 5 AND 6 POINT STARS; THE RELIGIOUS EVENTS FOR THE
CUBBYHOLES; THE MEZZUZAH ON THE POTTER AUDITORIUM DOORJAM; THE
AGREEMENT YOU AND MR FERRARA CAME TO THAT ALLOWED BALCONY ITEMS TO
REMAIN ON ALL BALCONIES (NOT JUST THE CORWINS) PRIOR TO THE FILING; THE
PROFESSIONALISM LYNNE ROTAN IS EXPECTED TO CARRY, AS MANAGER, IN REGARD TO
THE CORWINS; ETC. WE FAXED THESE CORRECTIONS TO YOU.

NEXT, IN YOUR LETTER OF FEBRUARY 1, 2006, YOU STATE THAT IN OUR JANUARY
29, 2006 LETTER, WE COMMENTED TO YOU THE ISSUE CAUSING OUR RESENTMENT IN THE
DRAFTS IS "THE APPEARANCE OF ONE RELIGION,...." YOU ALSO STATED TO ALLEVIATE
OUR RESENTMENT, WE ASK THAT YOUR CLIENTS ...... THIS IS UNTRUE. READ THAT
LETTER AGAIN:

WE ARE HOPING WE CAN RESOLVE THIS RESENTMENT WE HAVE IN THIS ONE AREA. ....HERE IS THE
AREA....WHY CAN...YEAR ROUND....WITH THE APPROVAL OF BNAI BRITH HOUSE OWNERS...AGAINST HUD
LAW...BUT...TENANT SIMPLY IS NOT PERMITTED TO DISPLAY HIS OR HER OWN FAITH TEMPORARILY...IN THE
BBH LOBBY DURING THE HOLY DAYS OF CHRISTMAS........(CRECHE).

NEXT, I RECEIVED AN OVERNITE LETTER FROM YOU ON JANUARY 31, 2006 WITH A
FINAL STIPULATION OF SETTLEMENT AND NOTICE TO RESIDENTS, FOR OUR SIGNATURE.
YOU STATE IN THE COVER LETTER OF THE JANUARY 31, 2006 LETTER THAT MANY OF THE
CHANGES THAT WE SUGGESTED (ABOVE CRECHE, INSTANCE), COULD NOT BE MADE
BECAUSE THOSE CHANGES DO NOT COMPORT WITH THE TERMS OF THE AGREEMENTS
WE REACHED. HOWEVER, IN READING OVER THIS FINAL STIPULATION, THERE STILL
WERE NECESSARY CHANGES YOU OMITTED AND SOME CHANGES NEEDED SUCH LIKE
YOUR CONTINUING OMISSION OF THE PROFESSIONALISM LYNNE ROTAN IS EXPECTED TO
CARRY; THE BALCONY ITEMS PERMITTED TO REMAIN ON ALL BALCONIES, PER THE
NOVEMBER 23, 2005 CONFERENCE; THE CHECK ISSUE DATE CHANGE, ETC.

MR EDELSTEIN, INSTEAD OF RUSHING US WITH A FINAL STIPULATION, DATED
JANUARY 30, 2006, WHEN IT IS NOT READY FOR SIGNATURE, IS WHEN YOU SHOULD OF
GIVEN IT MORE TIME IN THE WORKS BETWEEN US.

NEXT, IN MY FAX TO YOU ON JANUARY 31, 2006, I DID NOT SAY I WOULD NOT SIGN
THE FINAL DRAFT, I SAID....PLEASE, IF YOU WOULDN'T MIND, INCORPORATING INTO THE
FINAL DRAFTS THESE NECESSARY CHANGES AND THAT MY CHANGES, AS PLAINTIFFS,
WERE NOT DUE TO YOUR OFFICE UNTIL FEBRUARY 1, 2006.

1

SINCE YOUR DEFENDANTS' RESPONSE TO OUR JANUARY 29, 2006 REQUEST, IN
ASKING THE DEFENDANTS TO SERIOUSLY RECONSIDER THE STIPULATION TO REFLECT A
UNITY OF FAITHS AT BBH (A VOID AND RESENTMENT TO US, AS WE FORMULATED THE
STIPULATION IN REGARDS TO THE LOBBY AT CHRISTMAS (I.E. CRÈCHE PLACEMENT) AND
HANAKAH), WAS GIVEN A: *COULD NOT BE MADE.....* IN YOUR LETTER WE RECEIVED ON
JANUARY 31, 2006...NEXT, AFTER CONSULTING WITH AN ATTORNEY, WE STATED IN OUR
JANUARY 31, 2006 LETTER TO YOU THAT WE HAVE DECIDED TO SIGN THE SETTLEMENT
IN PART, OMITTING THE ISSUE OF BBH NOT PERMITTING RELIGIOUS ITEMS IN THE
LOBBY AT CHRISTMAS AND HANAKAH AND THEREBY REMOVING IT FROM THE
STIPULATION (I.E.CRÈCHE), AND THAT WE WISHED TO HAVE FURTHER TALKS WITH
DEFENDANTS ON THIS ISSUE OR LITIGATE IT FURTHER, AND WE DID NOT WANT THIS
ISSUE PREJUDICED IN THE FINAL STIPULATION. WE NEVER SAID WE WOULD NOT SIGN
THE AGREEMENT - WE JUST WANTED A CERTAIN MATTER EXCLUDED FROM THE
AGREEMENT IN ORDER FOR THIS PARTICULAR ISSUE TO BE HANDLED SOMETIME IN THE
FUTURE BY US. WE NEVER SAID ANYTHING IN OUR LETTER THAT IF OUR DEMANDS
WERE NOT MET, AS YOU STATED IN YOU FEBRUARY 1, 2006 LETTER....WE SIMPLY WERE
BEING OPEN ABOUT WHAT AVENUES WE MAY TAKE TO COME TO AN ACCEPTABLE
RESOLUTION WITH THE CRÈCHE ISSUE.

IN YOUR FAX OF FEBRUARY 1, 2006, YOU STARTED CALLING US NAMES. I DON'T
EVEN KNOW THE MEANING OF THE WORD DISINGENUOUS, AND I KNOW THE SECOND
NAME-CALLING WORD YOU USE HAS NOTHING TO DO WITH COMING TO AGREEMENTS
THAT ARE FAIR. ALSO, IN YOUR LETTER, YOU STATE YOU WILL GIVE ME ONE LAST
OPPORTUNITY TO THE SIGN THE AGREEMENT YOU SENT TO US ON JANUARY 30, 2006.
BUT, THE STIPULATION IS INADEQUATE AND NOT ALL THE TERMS ARE LISTED: AND
BESIDES, YOU ARE NOT OUR SUPERIOR. IF YOU DO NOT WANT TO SPEND MORE TIME ON
THIS (STIPULATION), AS YOU STATED IN YOUR LETTER, BECAUSE OF YOUR CONSCIENCE
(THANK GOODNESS, IT IS NOT MINE), THEN THAT IS BETWEEN YOU AND THE COURT.

YOU ALSO STATE IN YOUR LAST PARAGRAPH OF YOUR FEBRUARY 1, 2006 LETTER,
THAT IF YOU DO NOT RECEIVE A FAVORABLE, UNCONDITIONAL REPLY...BY...I WILL
REINSTATE..... (SOUNDS LIKE A THREAT)..... AND, YOU STATE BECAUSE OF
"(PLAINTIFFS') UNJUSTIFIED REFUSAL TO SETTLE THIS MATTER" ...THIS IS ABUSIVE
TALK, AND UNTRUE ...."AND BECAUSE OF (PLAINTIFFS') CYNICAL (I DON'T KNOW WHAT
THIS WORD MEANS, AND MAYBE I AM BETTER OFF) DISREGARD FOR JUDGE SLEET
(WHICH NEVER HAPPENED): JUDGE THYNGE (WHICH NEVER HAPPENED); YOUR CLIENTS
(WHICH NEVER HAPPENED; *REMEMBER* - WE ARE THE PLAINTIFFS INJURED; YOU
REPRESENT THE DEFENDANTS); YOURSELF (WHO SAYS MEAN THINGS TO PEOPLE); AND
FORMER COUNSEL (WHO DID NOT INFORM US PROPERLY OR TOLD US THINGS FAR FROM
THE TRUTH); AND THAT YOU WILL MOVE THE COURT FOR AN ORDER TO ASSESS COSTS
AND ATTORNEY'S FEES AGAINST US IN THIS SUIT (AGAINST PLAINTIFFS, WHO HAVE
NOTHING),..... (WHOSE DEFENDANTS THAT HIRED YOU, IF THEY HAD LISTENED TO OUR
PLEA AND BEEN FIRM WITH LYNNE ROTAN, AT THE LEAST, AT THE ONSET, WHEN WE
ASKED THAT THEY FIRE HER, THIS LAWSUIT WOULD OF NEVER HAPPENED); YET, STILL
YOU WOULD ASSESS COSTS AND FEES AGAINST US, (WHO ARE INNOCENT AND
TRUTHFUL).

MR EDELSTEIN, WHEN YOU JUDGE US IN THIS FASHION, YOU WILL BE JUDGE, (USING THE
SAME MEASURING SCALE). GOD HAVE MERCY ON YOUR SOUL, WHO IS MERCIFUL.
ATTORNEY EDELSTEIN, THE INVESTIGATOR AT DELAWARE DIVISION OF HUMAN
RELATIONS IN OUR COMPLAINT, MR PAYLOR, TOLD US THAT YOU ARE "COCKY"
BECAUSE YOU KNOW HUD LAW. HOWEVER, THERE IS ONE LAW YOU ARE FORGETTING,
AND THAT IS **GOD ALMIGHTY'S LAW**, BUT ONE MUST BE HUMBLE TO SEE IT.

*ISIDORE AND BONNIE CORWIN, PLAINTIFFS, PRO SE*

2

In The United States District Court
for the District of Delaware

Isidore Corwin and Bonnie Corwin
PLAINTIFFS,

AGAINST
Bnai Brith Senior Housing, Inc.
and Lynne Rotan                         CIVIL Action
                                        04-1499
DEFENDANTS                              (GMS)

Plaintiffs' 2/2/06 letter to atty. Edelstein
Certificate of Service

I, Bonnie Corwin, Pro se, hereby certify
that on February 2, 2006, I ~~filled~~ carried the
Plaintiffs' 2/2/06 letter to atty Edelstein
with the Clerk of the Court, which will send
notification of such filing, and have also
faxed (1) one true & correct copy of
Plaintiffs' 2/2/06 letter to atty Edelstein
and the respective Certificate of Service to the
same via fax to:
   David Wilks, Esq.
   Buchanan Ingersoll, P.C.
   1007 N. Orange St., Suit 1110
   Wilmington, De 19801   Bonnie Corwin 2/2/06
860 F Society Dr. Claymont, De    BONNIE CORWIN

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ISIDORE CORWIN AND BONNIE CORWIN

Plaintiffs,

v.

Civil Action No. 04-1499 (GMS)

B'NAI B'RITH SENIOR CITIZEN HOUSING,
INC. AND LYNNE ROTAN

Defendants.

## **ORDER CONFIRMING SETTLEMENT**

The parties having settled this complaint on November 23, 2005 following

voluntary mediation, D.I. 36, and on January 25, 2006 at the status hearing held before

this Court, D.I. 44,

IT IS ORDERED that the following settlement be, and hereby is, made a part of

the record in this case:

1.    Defendants agree to take the following actions in order to ensure that the

lobby, solarium, hallways and other common areas of B'nai B'rith House ("BBH") are

maintained in a religiously neutral state that does not endorse or appear to endorse or

favor any religion:

        a.    Religious objects and symbols will not be permitted in any of the common

           areas of BBH including but not limited to magazines, newspapers, books,

           posters, decorations or symbols.

        b.    Religious services will not be permitted in any of the common areas of

           BBH.  During the Christmas and Hanukah seasons, however, BBH will

continue to allow residents to display a Christmas tree and Menorah along with other non-religious seasonal decorations.

c.   Announcements of religious services will be permitted on the BBH bulletin board and in its newsletter but will be prohibited in any other common areas.

d.   The mezuzah on the doorpost of the entrance of BBH will be removed and will be made part of a non-religious commemorative plaque honoring the founders of the BBH.

e.   BBH will hang a notice in the lobby welcoming all people to dwell in peace together regardless of race, creed, religion, national origin, gender or sexual preference.

2.      Residents who wish to conduct religious services on the premises will be permitted to conduct such services in the Potter Auditorium only, which shall be modified and maintained to provide worship space as follows:

a.   BBH will continue to allow religious services to be conducted in the Potter Auditorium in a manner that ensures equal access to residents of all religions.

b.   The mezuzah on the door post of the Potter Auditorium will be removed.

c.   BBH will continue to accept without regard to religion all announcements of religious services in the Potter Auditorium as composed by tenants for placement in the BBH newsletter.

d.   Tenants will continue to be allowed to place announcements of religious services in tenant cubbyholes.

2

e.  The sign "Congregation *Machizek Hadas*" will be removed; however, temporary signs may be used to notify residents about services in progress.

f.  Torah scrolls and other accoutrements of Jewish worship will be enclosed by a curtain to be installed on the riser so that they are not visible when Jewish services are not in progress.

g.  Similarly, the accoutrements of Catholic and Christian and other worship services, including any portable altar for Mass, will be enclosed by a separate curtain to be installed on the riser so that they are not visible when Catholic or Christian services are not in progress.

3.    BBH will continue to allow residents to display religious symbols and images of their choice (Mezuzahs, Crucifixes, etc.) on the outside of their apartment doors and on their individual mailboxes.

4.    BBH will continue to allow plaintiffs to display the iron crucifix affixed to their balcony wall.

5.    In its marketing plan for prospective tenants, BBH will place an equal number and size of paid advertisements in *The Jewish Voice* and the *Dialogue* (the local archdiocesan newspaper).

6.    BBH will issue to all residents the attached Notice to Residents (Exhibit A) outlining the policy changes that will go into effect pursuant to this settlement.

7.    Defendants will pay plaintiffs their out-of-pocket costs for this litigation in the amount of $2,999.00 by a check payable directly to plaintiffs to be issued to them on March 15, 2005 at BBH.

3

8.     The parties agree that in furtherance of this agreement they will refrain from public disparagement of each other.

9.     The parties agree to obey all applicable provisions of their Lease and BBH House Rules and to treat one another with dignity and respect.

10.     Upon entry of this ORDER the parties agree to a mutual release of any all claims they may have against each other up to and including the date on which this ORDER is entered.

11.     This action shall be dismissed with prejudice with this Court to retain jurisdiction only as to the enforcement of the terms of this ORDER.

SO ORDERED,

February _____, 2005.                         _____
                                              Hon. Gregory M. Sleet, USDJ

4

# NOTICE TO ALL RESIDENTS OF B'NAI B'RITH HOUSE

During the past holiday season, many of you noticed a number of changes taking place in B'nai B'rith House relative to religious displays and religious services in the building.  Many of you are also aware that B'nai B'rith House has been involved in a lawsuit brought by two of our residents who claimed that we discriminated against them on the basis of their religion.  **We are happy to report that this lawsuit has been amicably settled.**

While waiting for the settlement to become final, B'nai B'rith House decided to begin making some changes immediately, partly in reliance on the settlement agreement but also because we wish to continue our commitment to ensuring that the fair housing rights of every resident in this building are fairly recognized and respected.

As a result, B'nai B'rith House has implemented the following policies and procedures, which will be made a part of the House Rules in due course.

1. Religious items of any kind, including symbols, displays, magazines and literature, will not be permitted in any of the common areas.

2. Religious services will not be permitted in any of the common areas.  However, during the Christmas and Hanukah seasons, BBH will continue to allow residents to display a Christmas tree and Menorah along with other non-religious seasonal decorations.

3. Announcements of religious services will continue to be permitted on the BBH bulletin board and in its newsletter but will be prohibited in any other common areas.

4. Residents who wish to conduct religious services on the premises will be permitted to conduct such services in the Potter Auditorium only.   BBH will continue to allow religious services to be conducted in the Potter Auditorium in a manner that ensures equal access to residents of all religions.

5. BBH will continue to accept for publication in our newsletter all announcements of religious services in the Potter Auditorium. Residents will also continue to be allowed to place announcements of religious services in resident cubbyholes.

6. BBH will continue to allow residents to display religious symbols and images of their choice (Mezuzahs, Crucifixes, etc.) on the outside of their apartment doors and on their individual mailboxes.

7. Religious items used in the performance of religious services will be permitted in the Potter Auditorium during said services and will either be covered or removed from public site at the conclusion of the service or soon as safety permits.

8. Resident's who wish to display symbols of faith during their holidays will be permitted to sign up with the BBH office to display said items but will again follow the provisions of the paragraph above.

Lastly, it is important that we respect the dignity of all other residents in our community, especially those with whom we disagree. It is also important that each and every resident of BBH understand that federal and state laws make it illegal to harass or retaliate against anyone. We cannot overemphasize how important it is for all residents to avoid any conflict or potential conflict that could be construed as harassment or retaliation.

If you have any further questions or concerns about this matter, please feel free to contact me privately.

Lynne Rotan, Manager

February ___, 2006

2