CIVIL ACTION
04-1499 (GS)

IN U.S. DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

* * * * *

ISIDORE AND BONNIE CORWIN,

PLAINTIFFS

V.

BNAI BRITH SENIOR HOUSING, INC AND
LYNNE ROTAN

DEFENDANTS

* * * * *

HONORABLE JUDGE GREGORY M. SLEET, JUDGE

* * * * *

CORWIN                                          PRO SE
                                                COUNSEL

WILKS & EDELSTEIN                               COUNSEL FOR
                                                DEFENDANT

* * * * *

PLAINTIFF ANSWER TO DEFENDANTS SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

DATED: FEBRUARY 21, 2006



## PLAINTIFFS' *ANSWER* TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

### FACTS

THIS LAWSUIT AROSE OUT OF BNAI BRITH SENIOR HOUSING, INC., THE DEFENDANT IN THIS LAWSUIT, REQUESTS FOR THE CORWINS, THE PLAINTIFFS IN THIS LAWSUIT, TO REMOVE THEIR 71/2" CRUCIFIX OFF OF THEIR RENTED APARTMENT BALCONY WALL, AND ON APRIL 20, 2004. SUBSEQUENT TO THIS ACTION, THE CORWINS FILED A RELIGIOUS DISCRIMINATION COMPLAINT ON MAY 17, 2004, WITH THE STATE OF DELAWARE DIVISION OF HUMAN RELATIONS (DDHR), A HUD AGENCY, (BNAI BRITH SENIOR HOUSING, INC. IS A SECTION EIGHT (8) LANDLORD). THE DDHR COMPLAINT'S LAST PARAGRAPH READ: "WE FIRMLY BELIEVE THAT WE HAVE BEEN HARASSED, AND TREATED LESS FAVORABLE THAN OTHER TENANTS ON ACCOUNT OF OUR RELIGION AND HOW WE PRACTICE IT (AT THE BBH)." **(EXHIBIT A).**

DDHR HELD A FACT FINDING CONFERENCE HELD ON JULY 1, 2004. AT THE CONFERENCE, CLASI (COMMUNITY LEGAL AID SOCIETY, INC OF DELAWARE) LEGALLY REPRESENTED THE CORWINS AND MR STEVE EDELSTEIN, ESQ. REPRESENTED DEFENDANT ROTAN, THE BUILDING MANAGER. IN DISCUSSING A POSSIBLE SETTLEMENT, ROTAN APPEARED TO BE REMORSEFUL AND STATED SHE WOULD SIGN A WRITTEN APOLOGY TO THE CORWINS. HOWEVER, MR EDELSTEIN, HER COUNSEL, WAS INSISTENT THAT SHE HAD NOTHING TO REGRET IN HER ACTIONS. THIS STATEMENT BY THE COUNSEL, THE DDHR INVESTIGATOR TOLD THE CORWINS, LATER, WAS THE REASON FOR THE BREAKDOWN IN THE TALKS. NO CONCILIATION AGREEMENT WAS EVER REACHED ON JULY 1, 2004. POST CONFERENCE, MR EDELSTEIN, SUBSEQUENTLY, SENT THE INVESTIGATOR AN E-MAIL. THE FIRST PARAGRAPH BEGINS:

1

"ALTHOUGH DISAPPOINTED THAT WE WERE UNABLE TO SETTLE THIS CASE AT YESTERDAYS' FACT FINDING CONFERENCE,....". (EXHIBIT B), OPPOSITE OF WHAT MR EDELSTEIN STATES IN HIS MOTIONS TO THE U.S. DISTRICT COURT, THAT THERE WAS, IN FACT, A SETTLEMENT ON JULY 1, 2004 AT DDHR.

POST THE JULY 1, 2004 CONFERENCE, THERE WAS CONTINUING DISCRIMINATION AT THE BBH (BNAI BRITH HOUSE) WITH ROTAN REQUESTING THE CORWINS TO ATTEND MANDATORY MEETINGS IN AUGUST, 2004, (WHICH IS HUD-ILLEGAL), (EXHIBIT C), AND LEADING TO THE BREAKDOWN OF DDHR'S ATTEMPT TO FURTHER TO SETTLE THE COMPLAINT BY TELEPHONE WITH THE PARTIES.

A RELIGIOUS DISCRIMINATION COMPLAINT WAS FILED NEXT BY PLAINTIFF CORWINS AGAINST DEFENDANT BNAI BRITH SENIOR HOUSING, INC. AND ROTAN AT THE U.S. DISTRICT COURT IN WILMINGTON, DELAWARE ON DECEMBER 7, 2004.

IN THE FILING, PLAINTIFFS, ROMAN CATHOLICS, REPRESENTED BY TWO RELIGIOUS-BASED ATTORNEYS, NAMED SUPPORTIVE RELIGIOUS DISCRIMINATORY ACTIONS CAUSED BY THE DEFENDANTS TOWARD THE PLAINTIFFS IN AGAIN REQUESTING THEM TO REMOVE THEIR SAINT FRANCIS PEACE PRAYER DECORATION OFF THEIR OWN APARTMENT FRONT DOOR, WHILE PERMITTING JEWISH MAZZUZAHS TO BE HUNG AT OTHER RESIDENT DOORS; AND, IN REQUESTING THEM TO REMOVE THEIR CHRISTIAN RELIGIOUS DECORATIONS FROM THE APARTMENT BUILDING TRADITIONAL COMMON AREA, USED FOR HOLIDAY DECORATING, WHILE PERMITTING JEWISH DECORATIONS TO REMAIN IN THESE SETTING.

(DEFENDANTS' 2004 REQUEST FOR THE PLAINTIFFS TO REMOVE THEIR CRUCIFIX OFF THEIR BALCONY WALL AND THEIR 1993 REQUEST FOR THE PLAINTIFFS TO REMOVE THEIR SAINT FRANCIS PEACE PRAYER DECORATION OFF THEIR OWN APARTMENT FRONT DOOR WAS SETTLED AT A NOVEMBER 23, 2005 MEDIATION CONFERENCE AT U.S. DISTRICT COURT WHERE THE MEDIATION JUDGE OPINED THAT THE LANDLORD HAS "NO BUSINESS" IN CITING EITHER. ALL PARTIES AGREED.).

IN RETROSPECT, WITH THE ISSUES OF THE U.S. DISTRICT COURT DOCKET: TRIAL DATE WAS SET, AND DISCOVERY PROCEEDED WITH DEPOSITIONS SCHEDULED FOR

2

NOVEMBER 4, 2005 IN WILMINGTON, DELAWARE:

AT DEPOSITION, ROTAN, WAS DEPOSED. SHE ADMITTED THAT ON DECEMBER 4, 2003, IN REQUESTING PLAINTIFFS TO REMOVE THEIR CHRISTIAN RELIGIOUS DECORATIONS FROM THE APARTMENT BUILDING TRADITIONAL COMMON AREA, USED FOR HOLIDAY DECORATING, SHE DID THIS TO AVOID DELAWARE AND FAIR HOUSING ACT VIOLATIONS. TOO, SHE ADMITTED THAT SUBSEQUENT TO THIS REQUEST, ON OR ABOUT DECEMBER 20, 2004, SHE REMOVED A NATIVITY SCENE IN THE BBH LOBBY HOLIDAY SETTING, WHILE PERMITTING JEWISH-FAITH MEMORABILIA TO REMAIN IN THE HOLIDAY SETTING. SHE ADMITTED THROWING THE NATIVITY SCENE AWAY. **(EXHIBIT D, P.31-32):**

## *EXPLANATION OF A NATIVITY SCENE:*

**"THE NATIVITY SCENE, A BELOVED PART OF CHRISTMAS DECORATIONS THE WORLD OVER, CAN BE TRACED TO THE LOVE FOR AND DEVOTION TO JESUS CHRIST FELT BY SAINT FRANCIS OF ASSISI. FRANCIS DECIDED TO CELEBRATE CHRISTMAS IN THE YEAR 1223 IN A SPECIAL WAY, "TO SEE AS MUCH AS POSSIBLE WITH MY OWN BODILY EYES" THE WAY JESUS WAS BORN. SO HE SET UP A REAL MANGER SCENE IN THE TOWN OF GRECCIO (FROM WHICH THE WORD "CRÈCHE" COMES FROM) AND THE TOWNSPEOPLE GATHERED WITH FRANCIS AND HIS FRIARS TO PRAISE GOD IN PRAYER AND SONG. THE PEOPLE'S IMAGINATIONS WERE FIRED WITH LOVE FOR THE SAVIOR, AND SO A POPULAR TRADITION WAS BORN." (CREATIVE COMMUNICATIONS FOR THE PARISH).**

POST DEPOSITIONS, A MEDIATION CONFERENCE WAS SCHEDULED.

PRIOR TO MEDIATION, PLAINTIFFS CONTACTED THEIR LEAD ATTORNEY TO COMMENCE DISCUSSION WITH HIM ON **HUD'S (HOUSING AND URBAN DEVELOPMENT) FAITH-BASED INITIATIVE PROGRAM** IN REGARD TO THE CONTEXT OF THE RELIGIOUS DISCRIMINATION LAWSUIT. THIS WHITEHOUSE FAITH-BASED "INITIATIVE" PROGRAM PERMITS HOUSING OWNERS TO GENERALLY DECORATE ITS BUILDING IN A FIXED WAY WITH ITS OWN FAITH'S MEMORABILIA. HOWEVER, THE "INITIATIVE" OPPOSED PLAINTIFFS' CONFIDENTIAL MEDIATION STATEMENT, WHERE THEY OFFER DEFENDANTS TO DECORATE "NEUTRAL", IF DEFENDANTS CONTINUE TO WANT TO DENY OTHER FAITHS EQUAL ACCESS IN THEIR COMMON AREAS, SUCH AS IN THE LOBBY HOLIDAY SETTING.

3

ON NOVEMBER 19, 2005, PLAINTIFFS SENT A LETTER TO THIS LEAD ATTORNEY CONFIRMING THEIR CONVERSATION WITH HIM ABOUT THE **HUD FAITH BASED INITIATIVE PROGRAM** AND THEIR EARLIER CONVERSATION WITH A REPRESENTATIVE, MR LEW, AT THE HUD MULTI-FAMILY HOUSING IN PHILADELPHIA REGARDING THE SAME. **(EXHIBIT E)**. PLAINTIFFS' LEAD ATTORNEY RECEIVED THE FAX FROM THE HUD REPRESENTATIVE AND SUBSEQUENTLY TALKED WITH MR LEW, AS THE PLAINTIFFS HAD REQUESTED. MR FERRARA, THE LEAD ATTORNEY, THEN TOLD PLAINTIFFS THAT MR LEW "DOESN'T KNOW THAT MUCH", AND THAT THE DEFENDANTS' ATTORNEY, MR EDELSTEIN, PROBABLY *DOESN'T EVEN KNOW ANYTHING* ABOUT THE FAITH BASED INITIATIVE PROGRAM. THE LEAD ATTORNEY DISMISSED THE SUGGESTED PROGRAM AS APART OF PLAINTIFFS' LAWSUIT DIALOGUE AT MEDIATION CONFERENCE. HOWEVER, PLAINTIFFS CONTINUED TO INQUIRE ABOUT THE "INITIATIVE" AND IN REGARDS TO THE LAWSUIT. **(EXHIBIT F)**.

AT THE MEDIATION CONFERENCE ON NOVEMBER 23, 2005, THE HUD FAITH-BASED INITIATIVE PROGRAM WAS NOT MENTIONED BY COUNSEL ON EITHER SIDE. IN PLAINTIFFS' OFFER FOR DEFENDANTS TO GENERALLY PROVIDE EQUAL ACCESS TO OTHER FAITHS IN THEIR POLICY OF DECORATING AT BBH, THE DEFENDANTS DENIED THE OFFER, AND OPTED TO DECORATE "NEUTRAL" IN THEIR COMMON AREAS.

IN DECIDING WHAT IS "NEUTRAL" OR "GENERIC" AND THEREBY PERMITTED IN DEFENDANTS' THEIR-ELECTED "NEUTRAL" POLICY, (SUCH AS IN THEIR SEASONAL LOBBY HOLIDAY SETTING), THE MEDIATION JUDGE ADVISED THAT A MANURAH, A JEWISH-FAITH SYMBOL FOR HANAKAH, IS "GENERIC", PER CASE LAW, AND THEREFORE, PERMITTED (PLAINTIFFS' LEAD ATTORNEY WAS UNPREPARED TO ARGUE OTHERWISE). THE MEDIATION JUDGE ADVISED THAT A NATIVITY SCENE, A CHRISTIAN-FAITH SYMBOL FOR CHRISTMAS, IS "RELIGIOUS", AND THEREFORE DENIED ACCESS TO BBH'S HOLIDAY SETTING, EVEN THOUGH U.S. SUPREME COURT CASE LAW DID NOT CONCUR, (WHICH PLAINTIFFS LEAD ATTORNEY WAS UNPREPARED TO ARGUE).

4

AT THE CONCLUSION OF THE NOVEMBER 23, 2005 CONFERENCE, IN RESPONSE TO
PRESSURES AND STATEMENTS FROM PLAINTIFFS' ATTORNEYS (SOME OF WHICH
PRESSURES AND STATEMENTS WERE "FURTHER FROM THE TRUTH", PER A STATEMENT
AT THE STATUS HEARING OF JANUARY 25, 2006), PLAINTIFFS SETTLED.  IN TERMS OF
PLAINTIFFS' NATIVITY SCENE OFFER, THE NATIVITY SCENE  WAS RELINQUISHED DOWN
THE HALL, PER THE DEFENDANTS, AWAY FROM THE HOLIDAY SETTING IN THE LOBBY.

FOUR DAYS AFTER SETTLEMENT, ON NOVEMBER 27, 2005,     PLAINTIFFS
CONTACTED THEIR ATTORNEYS, STATING:

(UPON)  REFLECTING ON THE AGREED TALKS.....(PLAINTIFFS) ARE ASKING THAT BEFORE YOU SIGN THE
SETTLEMENT...(IF THEY) COULD YOU CLEAR UP SOME TERMS (FOR THE PLAINTIFFS) THAT WERE TOLD
TO (THE PLAINTIFFS) AT CONFERENCE...WHAT (PLAINTIFFS) DON'T WANT WRITTEN (AS
SETTLEMENT),....(SOMETHING) INAPPROPRIATE IN A HUD-ASSISTED BUILDING....(I.E. THE  CLAIM
THAT A MANURAH IS A NEUTRAL SYMBOL AND PERMITTED IN A BBH "NEUTRAL" HUD-
SUBSIDIZED HOLIDAY SETTING; AND THE CLAIM THAT A CRÈCHE SCENE, A RELIGIOUS
SYMBOL, IS NOT PERMITTED IN A BBH HUD-SUBSIDIZED HOLIDAY SETTING, CONTRARY
TO U.S. SUPREME COURT CASE LAW.).

ON NOVEMBER 30, 2005,  WITH TERMS OF  SETTLEMENT STILL UNCLEAR TO THE
PLAINTIFFS, WITH ONE OF THEIR ATTORNEYS NOT RESPONDING TO THEIR REQUEST FOR
CLARITY AND THE OTHER ATTORNEY, VERY ANGRY WITH THEIR REQUEST FOR CLARITY,
PLAINTIFFS WROTE A LETTER TO THEIR CONGRESSMAN FOR CLARITY, WITH THEIR LAST
QUESTION TO HIM, STATING:

IN DECEMBER, BNAI BRITH DISPLAYS A MANURAH,...STAR OF DAVID...IN THE LOBBY FOR
HANAKAH.....CHRISTMAS TREE, 5-POINT STAR, A REINDEER FIGURE.....IT REFUSES FOR A CRÈCHE TO BE
PLACED UNDER THE GENERIC CHRISTMAS TREE...IS THIS HOUSE RULE WITHIN THE HUD AND SUPREME
COURT GUIDELINES? (EXHIBIT G).

THE NEXT DAY, DECEMBER 1, 2005, PLAINTIFFS REALIZING THAT SETTLEMENT
TERMS WERE UNCLEAR TO THEM, AND CREATING MEDIATION RESULTS THAT WERE
UNFAVORABLE TO THEM, PLAINTIFFS TERMINATED THEIR ATTORNEYS.     (THE
ATTORNEYS  HAD ALL ALONG BEEN  FULLY KNOWLEDGEABLE   OF PLAINTIFFS'
INTERESTS, GOALS AND NEEDS IN PLAINTIFFS FILED LAWSUIT).

ON DECEMBER 1, 2005, PLAINTIFFS NOTIFIED THE COURT OF THEIR ATTORNEYS DISMISSAL. **(EXHIBIT H).**

ON DECEMBER 2, 2005, DEFENDANTS FILED THEIR FIRST MOTION FOR THE COURT TO ENFORCE THE SETTLEMENT OF NOVEMBER 23, 2005.

PLAINTIFFS' RESPONDED, WITHOUT COUNSEL, TO THE MOTION WITH A REPLY LETTER TO THE COURT, SETTING FORTH REASONS WHY THE SETTLEMENT SHOULD NOT BE ENFORCED - THAT IT DISADVANTAGED PLAINTIFFS IN ERRONEOUS LAW AND WAS AGAINST THE HUD'S FAIR HOUSING AMENDMENT OF 1988, WHICH PROHIBITS SPECIFIC KINDS OF (RELIGIOUS) DISCRIMINATORY ACTS (COERCION, BEING ONE).

THE PRESIDING JUDGE ORDERED A STATUS HEARING FOR JANUARY 25, 2006, FOR THE PURPOSE OF DISCUSSION (INCLUDING WHY PLAINTIFFS DECIDED TO TERMINATE THEIR ATTORNEYS).

IN PREPARATION FOR THE STATUS HEARING, AND ON JANUARY 13, 2006, PLAINTIFFS, HAND-CARRIED A LETTER TO THE JUDGE IN THEIR CASE, OF WHY THEY TERMINATED THEIR ATTORNEYS AND THEIR ATTEMPT AT SUPPORTIVE MEMORANDUM OF LAW. INCLUDED IN THIS DOCUMENT, IS THE INTERCHANGE BETWEEN THE PLAINTIFFS AND THE DEFENDANTS' IN THE CRÈCHE (SCENE) OFFER OF NOVEMBER 23, 2005. (SEE PLAINTIFFS' DECISION TO TERMINATE THEIR ATTORNEYS WITH MEMORANDUM OF LAW, P. 6).

AT THE JANUARY 25, 2006 STATUS HEARING, THE COURT PERMITTED REVIEW AND DISCUSSION OF PLAINTIFFS' OBJECTIONS TO THE MEDIATION CONFERENCE OF NOVEMBER 23, 2005, WHICH INCLUDED THEIR LETTER OF OBJECTIONS OUTLINED TO THE PLAINTIFFS' FORMER ATTORNEYS ON NOVEMBER 29, 2005. **(EXHIBIT I).**

AT THIS SAME STATUS HEARING, PLAINTIFFS AGAIN PATIENTLY PRESENTED THE OFFER TO THE DEFENDANTS THAT THEIR NATIVITY SCENE BE APART OF THE BBH HOLIDAY SETTING. THE TRIAL COURT ISSUED ALL PARTIES SUPREME COURT CASE LAW, **LYNCH, MAYOR OF PAWTUCKET, ET AL. V. DONNELLY ET AL , 465 U.S. 668; 104 S. CT.**

6

**1355; 79 L.ED. 2D 604; 1984 U.S. LEXIS 37; 52 U.S.L.W.4317** , WITH JUSTICE O'CONNOR CONCURRING AND IN A SEPARATE OPINION CONCLUDING THAT THE .... CRÈCHE DISPLAY (NATIVITY SCENE) WAS NOT INTENDED TO ENDORSE AND DID NOT HAVE THE EFFECT OF ENDORSING A RELIGION, (A LIKEWISE STATUS PROCLAIMED IN PLAINTIFF' OFFER FOR A CRECHE SCENE TO BE IN THE HOLIDAY SETTING AT BBH).

COUNSEL EDELSTEIN, THE DEFENDANTS' COUNSEL, STATED HE DID NOT PARTICULARLY AGREE WITH THE JUSTICE O'CONNOR. AGAIN, THE DEFENDANTS DENIED PLAINTIFFS' NATIVITY SCENE ACCESS TO THEIR LOBBY HOLIDAY SETTING.

AT THE CLOSE OF THE STATUS HEARING, ON JANUARY 25, 2006, ONE OF THE TERMS OF SETTLEMENT WAS TO INCLUDE THAT DEFENDANT ROTAN, (WHO WAS NOT PRESENT AT THE HEARING), WAS TO PERFORM HER MANAGERIAL DUTIES IN A MORE PROFESSIONAL MANNER WITH THE PLAINTIFFS, (IN LIEU OF AN INJUNCTION, STATED IN THE ORIGINAL COMPLAINT); AND THAT SPM, HER MANAGEMENT COMPANY, WOULD BE CLEARED AS A DEFENDANT IN THE SUIT.   AS WELL, THE COURT ORDERED DEFENDANT COUNSEL EDELSTEIN AND ONE OF THE PLAINTIFFS, BONNIE CORWIN, TO JOINTLY DRAFT A LETTER TO THE BNAI BRITH HOUSE TENANTS, WITH POLICY CHANGES AT THE BBH. THE FINAL DRAFT OF THE STIPULATION, INCLUDING THE LETTER TO THE TENANTS, WAS TO BE SIGNED BY BOTH PARTIES AND DELIVERED TO THE JUDGE'S CHAMBERS, BY 4:30PM, FEBRUARY 6, 2006; AND WITH THE JUDGE ASSUMING THAT THE STIPULATION WAS AGREED UPON BY BOTH PARTIES AND, THEREFORE, WOULD ACCEPT THE STIPULATION TERMS WITHOUT HIS PERSONAL REVIEW.

THE VERY NEXT DAY, ON JANUARY 26, 2005, PLAINTIFFS FAXED A LETTER TO ATTORNEY EDELSTEIN TO BEGIN THE PROCESS OF JOINTLY-DRAFTING THE LETTER TO THE BBH TENANTS, WITH PLAINTIFFS PRO STATEMENTS THEY WANTED DRAFTED IN THE LETTER AND STATEMENTS OF OMISSION THEY WANTED DRAFTED IN THE LETTER. (EXHIBIT J, FIRST PARAGRAPH):

7

IN THE JANUARY 26, 2006 LETTER TO MR EDELSTEIN, THE PLAINTIFFS STATE:

**"(WE) DID NOT LOOK OVER THE DRAFT TO THE TENANTS YOU HAD WITH YOU YESTERDAY, (AT THE STATUS HEARING) BUT I DO KNOW.........ISIDORE AND I DO NOT WANT TO HAVE OUR NAME MENTIONED; (THE) CASE MENTIONED; OR THAT WE *(THE CORWINS)* SETTLED; ESPECIALLY SINCE THIS LETTER MIGHT BE BROUGHT TO THE ATTENTION OF FUTURE RESIDENTS WHO WILL RENT AT BBH."**

POST THE PLAINTIFFS CORRESPONDENCE, ON JANUARY 26, 2006, PLAINTIFFS RECEIVED A COPY OF MR EDELSTEIN'S OF FIRST DRAFT OF THE LETTER TO THE TENANTS. WITHIN THE FIRST PARAGRAPH, THE DRAFT READS:

**"....A LAWSUIT BROUGHT BY TWO OF OUR RESIDENTS WHO CLAIMED THAT WE DISCRIMINATED AGAINST THEM ON THE BASIS OF THEIR RELIGION." (EXHIBIT K)**

THIS ABOVE WORDING OF THE FIRST DRAFT WAS IN OPPOSITION TO PLAINTIFFS' REQUEST IN THEIR LETTER OF JANUARY 26, 2006, WHICH INSTRUCTED MR EDELSTEIN THEY DID NOT WANT THE SUIT MENTIONED. AS THE WORDING STOOD IN THIS DRAFT, IT ASSUMES AN ALIGNMENT BETWEEN THE PLAINTIFFS' LAWSUIT DEMANDS AND THE NEW POLICIES AT BBH; WHEN, IN FACT, DEFENDANTS CHOICE TO GO "NEUTRAL" IN THEIR POLICY AT BBH WAS A <u>REJECTION</u> OF PLAINTIFFS' RELIGIOUS TOLERANCE OFFER (AND THIS IS ONE OF THE REASON PLAINTIFFS DID NOT WANT TO BE ASSOCIATED WITH THE NEW POLICY CHANGES AT BBH). BESIDES, PER MEDIATION CONFERENCE OF NOVEMBER 23, 2005, THE PURPOSE OF THE LETTER, (THAT THE PLAINTIFFS INTRODUCED AT THE NOVEMBER 23, 2005 CONFERENCE) WAS ONLY TO MAKE CLEAR ANY POLICY CHANGES TO THE TENANTS, (AND NOT USED AS AN BBH ADVERTISING PLATFORM).

THE FIRST DRAFT OMITTED MANY DETAILS (FOR CLARITY PURPOSE) IN THE TENANTS LETTER, AND COMPLETELY OMITTED PLAINTIFFS NO. 2 REQUEST IN THEIR LETTER OF JANUARY 26, 2006 LETTER, REGARDING THE BBH BALCONY POLICY AGREED UPON AT THE NOVEMBER 23, 2005 MEDIATION CONFERENCE. (SEE EXHIBIT L, P.7-8)

ON JANUARY 27, 2005, PLAINTIFFS SENT A FAX TO MR EDELSTEIN, STATING:

8

**"YOU WILL FIND IN THE RETURN DRAFTS ..... WE HAVE MADE CORRECTIONS AND
ADDITIONS....YOU STATED TO ME ON THE TELEPHONE ON JANUARY 26, 2006, NOT TO MAKE
TOO MANY CHANGES ON YOUR DRAFT, BUT, TO REPEAT, WE WANT IT RIGHT (AND CLEAR)."
(EXHIBIT M).**

ON JANUARY 29, 2006, PLAINTIFFS, SEEING FOR THE FIRST TIME THE SETTLEMENT
TERMS *IN PRINT*, (WITH THE STIPULATION DRAFTS SENT TO THEM BY COUNSEL
EDELSTEIN), PLAINTIFFS BECAME   UNEASY WITH ONE AREA OF SETTLEMENT:
PLAINTIFFS KNEW THAT IT WASN'T THE LAW OF THE LAND THAT A HUD-SUBSIDIZED
APARTMENT BUILDING, WITHIN A SETTLEMENT, (ALBEIT EVEN PRIVATE), CAN GIVE
PREFERENCE TO ONE PARTICULAR FAITH, AS IN THE DEFENDANTS' CONTINUOUS DENIAL
OF PLAINTIFFS' CRÈCHE IN BBH'S HOLIDAY SETTING, AGREED UPON IN THE
STIPULATION.

ON JANUARY 29, 2006, PLAINTIFFS FAXED A LETTER TO THE DEFENDANTS
STATING THEY WERE VERY UNCOMFORTABLE WITH ONE AREA OF THE DRAFT, THAT
THEY WERE HOPING THEY COULD RESOLVE THE ISSUE (TOGETHER) PRIOR TO THE
JUDGE'S DEADLINE OF SETTLEMENT SIGNATURES ON FEBRUARY 6, 2006. PLAINTIFFS
IDENTIFIED THE AREA OF COMPLAINT TO THE DEFENDANTS' COUNSEL: THE DENIAL OF
THE NATIVITY SCENE PLACEMENT IN THE LOBBY HOLIDAY SETTING. PLAINTIFFS ASKED
THE DEFENDANTS IF THEY WOULD SERIOUSLY RECONSIDER THE SETTLEMENT, IN THIS
ONE ISSUE, TO REFLECT A UNITY OF FAITHS, BY RELAXING THEIR "NEUTRAL" POLICY AT
BBH ONE MONTH OUT OF THE YEAR AT THE HOLIDAY DISPLAY IN THE BBH LOBBY.
(EXHIBIT N).

DEFENDANTS' REPLY CAME IN THE FORM OF AN **OVERNITE** LETTER, DATED
JANUARY 30, 2006.    THE LETTER REJECTED THE PLAINTIFFS' REQUEST FOR
RECONSIDERATION IN ONE AREA. IT STATED:

**"MANY OF THE CHANGES YOU SUGGESTED COULD NOT BE MADE BECAUSE THOSE CHANGES DO NOT
COMPORT WITH THE TERMS OF THE AGREEMENT WE REACHED WITH THE MAGISTRATE JUDGE....AND
WITH JUDGE SLEET," (EXHIBIT O).**

9

AS WELL, DEFENDANTS' LETTER OF JANUARY 30, 2006, ENCLOSED A FINAL DRAFT OF THE SETTLEMENT FOR THE PLAINTIFFS' SIGNATURE. THE FINAL DRAFT OMITTED MANY DETAILS (FOR CLARITY PURPOSE) IN THE TENANTS LETTER DRAFT; COMPLETELY OMITTED PLAINTIFFS NO. 2 REQUEST IN THEIR LETTER OF JANUARY 26, 2006 LETTER REGARDING THE BBH BALCONY POLICY AGREED UPON AT THE NOVEMBER 23, 2005 MEDIATION CONFERENCE; COMPLETELY OMITTED THE TERMS OF SETTLEMENT TO INCLUDE DEFENDANT ROTAN, IN THAT SHE WAS TO PERFORM HER MANAGERIAL DUTIES IN A MORE PROFESSIONAL MANNER WITH THE PLAINTIFFS, ETC., ETC.

IT WAS EVIDENT THAT MR EDELSTEIN WAS "RUSHING" THE PLAINTIFFS TO SIGN AN INCOMPLETE FINAL SETTLEMENT DRAFT IN THEIR LAWSUIT SETTLEMENT AND PREMATURELY (OF WHICH DRAFT WAS NOT DUE TO BE FINALIZED FOR ALMOST SEVEN MORE DAYS). PLAINTIFFS DID NOT WANT TO BE INTIMIDATED INTO SIGNING SOMETHING THEY DIDN'T AGEE WITH.

PLAINTIFFS CONTACTED A DELAWARE BAR ATTORNEY. HE SUGGESTED TO THE PLAINTIFFS, REGARDING SETTLEMENT, THAT IN THEIR JANUARY 29, 2006 REQUEST FOR THE DEFENDANTS TO RECONSIDER THE TERMS OF THE NATIVITY SCENE PLACEMENT, AND WITH THE DEFENDANTS' JANUARY 30, 2006 SUBSEQUENT DENIAL OF THE NATIVITY SCENE PLACEMENT RECONSIDERATION, THE WAY THE SETTLEMENT SHOULD BE STIPULATED, (BUT STILL SIGNED), IS TO OMIT ENTIRELY THE ISSUE THE NATIVITY SCENE AT THE BBH. HE SAID IN THIS WAY THIS ONE ISSUE WON'T BE PREJUDICED FOR THE PLAINTIFFS, IN ORDER TO BE TO DISCUSS FURTHER OR TO BE LITIGATED FURTHER.

ON JANUARY 31, 2006, PLAINTIFFS FAXED A LETTER TO THE DEFENDANTS' COUNSEL, (EXHIBIT P), ACKNOWLEDGING THEY HAD RECEIVED THE FINAL DRAFT FROM HIM, BUT THAT THEY DIDN'T AGREE WITH THE DRAFT; ASKING THAT MR EDELSTEIN WOULD INCORPORATE INTO THE FINAL DRAFT NECESSARY CHANGES SUCH AS THE BALCONY FURNISHINGS AGREEMENT OF NOVEMBER 23, 2005, (OMITTED IN DRAFT); THE PROFESSIONAL BEHAVIOR CLAUSE REGARDING DEFENDANT ROTAN AGREEMENT OF JANUARY 25, 2006, (OMITTED IN DRAFT); THE SETTLEMENT NOW TO REFLECT THE OMISSION OF THE NATIVITY SCENE PLACEMENT TERMS, (TO BE DISCUSSED

FURTHER OR LITIGATED FURTHER), AND FOR MONEY SETTLEMENT TO REFLECT A DATE CHANGE, AMOUNT CHANGE , AND TYPE OF SETTLEMENT CHECK IN RESPECT TO DEFENDANTS' SETTLEMENT CHECK TO THE PLAINTIFFS.

(NOTE: IN DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT, FILED ON FEBRUARY 6, 2006, DEFENDANTS' LAST FOOTNOTE, NUMBER SIX (6), IS WHERE DEFENDANT STATES THAT THE AMOUNT OF THE BNAI BRITH PAYMENT TO PLAINTIFFS IN THE SETTLEMENT HAS BEEN CHANGED FROM $3000 TO $2999 SO THAT PLAINTIFFS WILL NOT RUN AFOUL OF HUD'S RENT SUBSIDY CERTIFICATION. THIS IS PURE CONJECTURE ON DEFENDANTS PART. THE TRUTH IS, AS FEDERALLY-FUNDED SSI RECEIPTS, AND AS A COUPLE, PLAINTIFFS ARE NOT PERMITTED TO HAVE RESOURCES WORTH OVER $3000, OR PLAINTIFFS WILL LOOSE THEIR MEDICAL COVERAGE AND INCOME).

NOTE: IN THEIR JANUARY 31, 2006 LETTER, PLAINTIFFS DID NOT INFORM DEFENDANTS' COUNSEL THAT THEY WOULD NOT SIGN A FINAL AGREEMENT, (AS DEFENDANTS STATED IN THEIR MOTION OF FEBRUARY 6, 2006); PLAINTIFFS DID NOT SAY IN THE LETTER THAT THAT THEY WERE GOING TO APPEAL, (PLAINTIFFS, PRO SE, SAID THEY DON'T KNOW IF ONE CAN APPEAL A SETTLEMENT); PLAINTIFFS DID NOT SAY THEY WOULD FILE A LAWSUIT; AND, PLAINTIFFS NEVER SAID ANYTHING LIKE... IF OUR DEMANDS REGARDING THE NATIVITY SCENE WERE NOT MET.....ETC., ETC. !!!

NEXT, ON FEBRUARY 1, 2006, DEFENDANT COUNSEL EDELSTEIN FAXED PLAINTIFFS A LETTER THAT HE WILL MOVE THE COURT FOR AN ORDER, ASSESSING COSTS AND REASONABLE ATTORNEYS FEES AGAINST THE PLAINTIFFS; AND THAT HE CANNOT SPEND ANY MORE TIME AND EFFORT TRYING TO SETTLE, DEMANDING PLAINTIFFS ONE LAST OPPORTUNITY TO SIGN THE INCOMPLETE SETTLEMENT AGREEMENT HE HAD SENT TO THE PLAINTIFFS ON JANUARY 30, 2006.

LATE, ON FEBRUARY 1, 2006, PLAINTIFFS RECEIVED A PHONE CALL FROM SENATOR CARPER'S OFFICE, FOLLOWED WITH A FAXED COPY OF THE RESPONSE FROM HUD, TO THE PLAINTIFFS LETTER OF NOVEMBER 30, 2005. (EXHIBIT G).

THE HUD LETTER STATES, IN PART :

"HUD REGULATIONS AT 24 CFR 5,109 EXPLICITLY PERMIT RELIGIOUS ORGANIZATIONS "TO PROVIDE SERVICES UNDER A HUD PROGRAM (THE FAITH-BASED INITIATIVE PROGRAM THAT PLAINTIFFS FORMER LEAD-ATTORNEY REFUSED TO CONSIDER IN REGARDS TO THE MEDIATION CONFERENCE DIALOGUE ON NOVEMBER 23, 2005), WITHOUT REMOVING RELIGIOUS ART, ICONS, SCRIPTURES, OR OTHER RELIGIOUS SYMBOLS." AND WITH THE OWNER OF THE BUILDING (BBH) PROVIDING LOBBY DISPLAYS OF VARIOUS

SEASONAL DECORATIONS, INCLUDING A MENORAH....SOME "GENERIC" CHRISTMAS DECORATIONS, ...AND SOME SECULAR...BUT WOULD NOT (PLAINTIFFS) TO DISPLAY A CRÈCHE .....IS WHERE THE OWNER MAY NOT DIFFERENTIATE...BASED ON RELIGION...IT MUST PROVIDE AN EQUAL OPPORTUNITY...". THE HUD LETTER OF LAW WAS SIGNED BY SECRETARY NESMITH, HUD ASSISTANT SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS. (EXHIBIT Q).

ON FEBRUARY 2, 2006, IN ORDER FOR THE COURT AND PARTIES TO TAKE NOTICE OF THE FEBRUARY 1, 2006 LETTER OF HUD LAW, (WHICH LAW CLEARLY IMPACTS THE TERMS OF PLAINTIFFS' CIVIL DISCRIMINATION LAWSUIT SETTLEMENT), PLAINTIFFS FILED AN OBJECTION TO THE MAGISTRATE'S REPORT AT THE U.S. DISTRICT COURT, REQUESTING FURTHER REVIEW BY THE COURT. (EXHIBIT R).

NOTE: A MISTAKE ON THE PART OF THE U.S. DISTRICT COURT CLERK'S OFFICE RETURNED SAID FILING TO THE PLAINTIFF, (EXHIBIT S).   (BY FEBRUARY 6, 2006, THE MISTAKE WAS RECOGNIZED AND THE CASE WAS RE-OPENED).

ON FEBRUARY 6, 2006, DEFENDANTS' COUNSEL EDELSTEIN FILED ANOTHER MOTION TO ENFORCE THE SETTLEMENT AGREEMENT. IN THE MOTION, DEFENDANTS REFUSED TO GIVE CREDENCE TO HUD'S FEBRUARY 1, 2006 LETTER OF HUD LAW REPLY, (OF WHICH U.S. SENATOR CARPER'S OFFICE TOLD PLAINTIFFS FIVE ATTORNEYS WORKED IN ANSWERING PLAINTIFFS LETTER OF CONCERN).   IN DEFENDANTS' MOTION, DEFENDANTS BELITTLED THE HUD CONGRESSIONAL OFFICE FINDING OF LAW AND IN REGARD TO PLAINTIFFS' DISCRIMINATION LAWSUIT,  STATED "WHILE DEFENDANTS BELIEVE ASSISTANT SECRETARY NESMITH'S (HUD ASSISTANT SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS) VIEWS HAVE NO RELEVANCE IN THESE PROCEEDINGS, ...IT IS INTERESTING TO NOTE THAT MR NESMITH'S POSITION (HUD ASSISTANT SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS) IS ....NOT THE ASSISTANT SECRETARY FOR FAIR HOUSING AND EQUAL OPPORTUNITY, THE OFFICE WITHIN HUD THAT ACTUALLY ENFORCES THE MATTER ON WHICH MR NESMITH OPINES." (SEE DEFENDANTS FEBRUARY 6, 2006 MOTION TO ENFORCE SETTLEMENT).

THE ATTITUDE OF THE DEFENDANTS IN THEIR MOTION REVEAL THE DEFENDANTS' HIERARCHY OF TRUE INTEREST, (WHICH IS NOT HUD LAW), AND WHILE

USING GOVERNMENT SUBSIDY. PLAINTIFFS PRAY THE COURT WILL RECOGNIZE THE ARROGANCE.

AFTER RECEIVING A COPY OF THE HUD LAW LETTER OF FEBRUARY 1, 2006, THE DEFENDANTS HAD AN OPPORTUNITY TO ADMIT TO THE COURT THAT THERE HAD OBVIOUSLY BEEN A MISTAKE IN LAW IN SETTLEMENT AND TO MOTION TO THE COURT THAT WE "GET IT RIGHT" IN SETTLEMENT. THIS DIDN'T HAPPEN. INSTEAD, EVEN WHEN THE HUD LETTER WAS FAVORABLE TO ALL PARTIES, ON FEBRUARY 6, 2006, FOR THE THIRD TIME, WITH A MOTION TO ENFORCE THE SETTLEMENT AGREEMENT, DEFENDANTS CHOSE TO DISMISS THE EVIDENCE OF LAW, AND INFLUENCE THE COURT TO DO THE SAME . **IF THE DEFENDANTS' TACTICS DON'T OUTRAGE YOU, IT SHOULD, IN AMERICA, WHERE THERE IS FREEDOM OF RELIGION AND RELIGIOUS EXPRESSION WHICH ARE OBVIOUSLY OPPOSED BY THE DEFENDANTS.**

ON FEBRUARY 14, 2006 (SAINT VALENTINE'S DAY), PLAINTIFFS RECEIVED ANOTHER LETTER, THIS TIME FROM A NATIONALLY-RECOGNIZED LAW FIRM, IN RESPONSE TO PLAINTIFFS' CONCERNS OF THE NATIVITY SCENE ACCESS CONTINUING TO BE DENIED AT BBH DURING THE YEARS 2003-2005, WHILE PERMITTING THE JEWISH FAITH SYMBOL, THE MENORAH, FOR INSTANCE:

THE LETTER STATES:

**"(I) WAS GLAD TO HEAR YOUR CASE HAS BEEN REOPENED...AS WE DISCUSSED YESTERDAY, WE DO NOT BELIEVE THE CASE LAW SUPPORTS A CLAIM THAT (A) MENORAH IS NOT A RELIGIOUS SYMBOL.....IT WAS HELD "THE MENORAH, ONE MUST RECOGNIZE, IS A RELIGIOUS SYMBOL....WHILE THERE MAY BE SECULAR ASPECTS TO THE HOLIDAY AND SYMBOL, RECOGNITION OF THIS DOES NOT NEGATE THE RELIGIOUS NATURE OF THE (MANURAH) SYMBOL." (COUNTY OF ALLEGHANY V. AMERICAN CIVIL LIBERTIES UNION, GREATER PITTSBURGH CHAPTER, 492 U.S. 573, 613 (1989). (EXHIBIT T).**

## (SEE DISCUSSION ON NEXT PAGE)

13

## DISCUSSION

PLAINTIFFS CLAIM THE COURT ABUSED ITS DISCRETION AND BASED ITS DECISION OF SETTLEMENT IN THE NOVEMBER 23, 2005 AND THE JANUARY 25, 2006 CONFERENCE ON AN ERRONEOUS CONCLUSION OF LAW (SEE UNITED STATES V. HARDAGE, 982 F.2D 1491, 1495 (10TH CIR. 1993) IN TERMS OF THE 2/1//2006 HUD LETTER OF THE LAW. PLAINTIFFS ALSO CLAIM THE  ISSUES INVOLVING THE FORMATION OF THE SETTLEMENT,  CONSTRUCTION, AND ENFORCEABILITY OF SETTLEMENT AGREEMENT WERE RESOLVED BY NOT APPLYING CONTRACT LAW (UNITED COMMERCIAL INS. SERV. INC. V. PAYMASTER CORP., 962 F.2D 853, 856 (9TH CIR. 1992) IN TERMS OF THE 2/1/2006 HUD LETTER OF THE LAW.

PLAINTIFFS CLAIM THAT THE DEFENDANTS, AT THE STATUS HEARING ON JANUARY 25, 2006 AT THE U.S. DISTRICT COURT, ADMITTED THAT IT WAS A MISTAKE FOR DEFENDANTS TO REQUEST THE PLAINTIFFS TO REMOVE THEIR CRUCIFIX FROM WITHIN THEIR APARTMENT ON APRIL 20, 2004, (THE MAIN COMPLAINT IN PLAINTIFFS' CIVIL ACTION FILED ON DECEMBER 7, 2004).   HOWEVER, IT IS TOO BAD THAT IT TOOK THE DEFENDANTS NEARLY TWO YEARS TO ADMIT THE MISTAKE.

PLAINTIFFS CLAIM, WITH REGARD TO THE NATIVITY SCENE PLACEMENT TERMS AT BBH AND THE DENIAL OF SUCH BY THE DEFENDANTS, FOR IT TO BE APART OF THE BBH LOBBY HOLIDAY SETTING, IS WHERE THE CIVIL ACTION HASN'T MOVED ONE BIT IN TERMS OF THE NATIVITY SCENE AND ITS EQUAL ACCESS, SINCE THE FILING OF THE COMPLAINT ON DECEMBER 7, 2004. DO PLAINTIFFS HAVE TO WAIT THE TWO YEARS FOR THIS MISTAKE TO BE CORRECTED, ACCORDING TO HUD LAW (AS THE DEFENDANTS ARE UNWILLING TO DO SO AT THIS TIME)?

## (SEE CONCLUSION ON NEXT PAGE)

14

## CONCLUSION

PLAINTIFFS PREFER THAT THE ISSUE CONCERNING THE NATIVITY SCENE BE IN
THEIR FAVOR NOW; BY PRESERVING THE ISSUE, AND INCORPORATING THE NATIVITY
SCENE PLACEMENT INTO THIS SETTLEMENT, AND PLAINTIFFS' QUESTION IS, WHY NOT
SETTLE ON THESE TERMS OF HUD, STATED IN THEIR FEBRUARY 2, 2006 LETTER?

(BESIDES, IN THE FUTURE, IT IS INEVITABLE SOMEONE WILL COME ALONG TO ENFORCE THE FEBRUARY
1, 2006 HUD LETTER OF LAW AT BBH, ANYWAY, AND THE RIGHTS OF THE PLAINTIFFS CONCERNING THE
NATIVITY PLACEMENT IN THE BBH LOBBY IN 2006 IS WHERE PLAINTIFFS WILL PERSEVERE, (AND
PLAINTIFFS ARE NOT PREVENTED FROM GOING TO HUD; AND ARE NOT BOUND IN DOING SO, BY A
PRIVATE SETTLEMENT).

ISIDORE CORWIN, PLAINTIFF PRO SE
8608 SOCIETY DRIVE
CLAYMONT, DELAWARE 19703
TELEPHONE/FAX 302-798-5116

BONNIE CORWIN, PLAINTIFF PRO SE
8608 SOCIETY DRIVE
CLAYMONT, DELAWARE 19703
TELEPHONE/FAX 302-798-5116

DATED: February 21, 2006

EXHIBITS ATTACHED: "A" THRU "T" (20)

ENC: CERTIFICATE OF SERVICE

15

STATE HOUSING COMPLAINT
CORWIN  v.  B' NAI B'RITH
Attachment 6a.


We believe Respondent discriminated against us in the conditions or terms of rental
occupancy, or in service and facilities on the basis of our Religion (Roman Catholic).
Specifically, on or about April 20, 2004, we received a notice from Respondent
demanding that we remove a Crucifix that is mounted on a wall outside on our private
deck. The Crucifix is a sacred symbol that represents our preference for Religious
worship. It has been in the same location for the past twelve years that we have lived in
this residence. Regular inspections by Respondent have brought no mention of the
Crucifix being an inspection violation.  Other residents, most notably of Jewish Faith,
displays religious symbols on their front doors, and to my knowledge, have not been
directed to removed them. Respondent has also directed us to remove a "deck storage
box" from my balcony that contains items that would otherwise clutter my balcony.
Again, other residents maintain their balconies in a less organized state than ours and are
not harassed. This action by the Respondent also appears to be associated with, and a
continuation of harassment that now extends into our religious beliefs and symbols. We
firmly believe that we have been harassed, and treated less favorable than other tenants on
account of our religion and how we practice it.


X *Isidore Corwin*
COMPLAINANT                         5 / 17 / 0 4
                                    DATE

*Bonnie Corwin*
COMPLAINANT                         5 / 17 / 0 4
                                    DATE


Sworn and subscribed before
me this  *17 th*   day of May, 2004.


NOTARY PUBLIC


RAYMOND L. PAYLOR
Division of Human Relations
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 25, 2004

A COPY

<br>

THE LAW FIRM OF
# COUGHLIN & KITAY

A PROFESSIONAL CORPORATION
3091 HOLCOMB BRIDGE ROAD
SUITE A-1
NORCROSS, GA 30071
(770) 840-8483 • FAX (770) 840-9492

KATHELENE COUGHLIN
THERESA L. KITAY

STEVEN J. EDELSTEIN
OF COUNSEL

**VIA EMAIL**

July 22, 2004

Raymond L. Paylor
Human Relations Specialist
Division of Human Relations
820 N. French Street
Wilmington, DE 19801

Re: *Corwin v. B'nai B'rith Senior Housing, Inc., et al.*
    Case No. NC-PA-616-04 (filed May 17, 2004)

Dear Ray:

Although disappointed that we were unable to settle this case at yesterday's Fact-Finding Conference, the conference did well to shed light on the parties' positions and to provide a road map for your investigation. I would like to summarize what I believe to be the facts that have come to light to date. As you will see, the vast majority of these are undisputed.

1. The B'nai B'rith House Rules and Regulations Handbook, which predates this case by many years, contains a rule which states: "Hanging items on the balcony is prohibited...Only furniture designed for outdoor use may be used on your balcony."

2. The House Rules also specify that: "The acceptance of the rules and regulations contained in this handbook or posted in the building are prerequisites for your Leasing Agreement. Please read carefully."

3. In June 2004 this rule was clarified to include "hanging anything on your balcony or balcony walls." The Respondent stated that she felt the rule needed to be clarified, in part, because of the Complainants' interpretation of the rule, but largely because residents were still hanging laundry on their balconies.



**COPY**

## ATTENTION ALL RESIDENTS:

**There will be a series of mandatory meetings held in August concerning lease issues, rules and regulations and community living.  All residents must attend! Please note the date your floor's meeting will be held.**

*First & Second Floor residents must attend*
**Wednesday, August 11        12:30pm – 2:00pm**

*Third & Fourth Floor residents must attend*
**Thursday, August 12        12:30pm – 2:00pm**

*Fifth, Sixth & Seventh Floor residents must attend*
**Friday, August 13        12:30pm – 2:00pm**

Внимание всех жильцов!

В августе в нашем доме состоится ряд обязательных собраний, посвящённых стоимости аренды квартир, правилам и образу жизни нашего дома.

Все жильцы обязаны посетить эти собрания!

Пожалуйста, запишите дату, когда состоится собрание для жильцов Вашего этажа.

Жильцы 1го и 2го этажей должны посетить собрание, которое состоится в среду 11 августа с 12:30 до 2 часов.

Жильцы 3го и 4го этажей – собрание состоится в четверг 12 августа с 12:30 до 2 часов.

Жильцы 5го, 6го и 7го этажей – собрание состоится в пятницу 13 августа с 12:30 до 2 часов.

7-21-04 Lynne Rotan, manager



**WILCOX & FETZER LTD.**

Registered Professional Reporters

December 28, 2005

TO:                   Christophe A. Ferrara, Esq.

CASE CAPTION:   Conine v. D'Kei Dieth Senior Citizen Housing, Inc.

DEPOSITION(S) OF:    Lynne Leton

Enclosed is the original deposition transcript taken November 4, 2005 in
the above-referenced case.

We are herewith returning this original transcript for filing, since the errata sheet has
not been returned to this office within the specified period of time.

If you have any questions, please do not hesitate to contact our office.

Sincerely,

Barbara S. Reichert

Barbara S. Reichert
Production Manager

Enclosure

```
 1      A.    Uh-huh.

 2      Q.    Is that the Christmas tree where the crèche

 3   scene was that was removed?

 4      A.    I don't know.  It is a Christmas tree that was

 5   in the lobby.  It could have been that one.  I don't

 6   know.

 7      Q.    Okay.  But the crèche scene we were talking

 8   about earlier was underneath a Christmas tree in the

 9   lobby?

10      A.    Yes.

11      Q.    And other than the Christmas tree I am showing

12   you would there be another Christmas tree in the lobby

13   at the time that picture was taken or was there usually

14   just one?

15      A.    No.  There is one every year.

16      Q.    So there is only one in the lobby every year?

17      A.    Yes.

18      Q.    Okay.  Do you remember the tenant who placed one

19   of the crèches retrieving it from your office after you

20   removed it?

21      A.    No.

22      Q.    What did you do with the crèches that you

23   removed?

24      A.    I believe we kept that one for about a month and
```





WILCOX & FETZER LTD.
Registered Professional Reporters

```
 1   then we discarded it.
 2       Q.   Threw it away?  How about the other two crèches
 3   that were removed, what did you do with those?
 4       A.   Waited for people to come ask for them back
 5   because we had no way of knowing who they belonged to.
 6       Q.   And what happened to those crèches?
 7       A.   I don't know.  I think they were returned.  They
 8   were retrieved from the owners.  I don't recall.
 9       Q.   Okay.  I am showing you number 27, do you
10   recognize that as a table with a prayer book,
11   candelabrum?
12       A.   I recognize this as a Chanukah -- as a Chanukah
13   table.
14       Q.   That's the Chanukah table set up in the lobby?
15       A.   Yes.
16       Q.   Every year at Passover?
17       A.   No.
18       Q.   When is that -- I'm sorry.  Forgive me.  At
19   Chanukah?
20       A.   At Chanukah.
21       Q.   And there are services conducted at that table?
22       A.   They have a candle lighting every night.
23       Q.   And how many nights did they have that?
24       A.   Either seven or eight, I don't remember.
```





NOVEMBER 19, 2005

DEAR CHRIS,

HI!

AS YOU KNOW, WHEN I TALKED WITH RICHARD LEW AT HUD MULTI-FAMILY IN PHILADELPHIA THE OTHER DAY IN REGARDS TO OUR QUESTION OF HUD REGS CONCERNING CHAPELS/SYNAGOGUES  IN HUD-ASSISTED APT COMPLEXES, HE INFORMED ME OF THE FAITH-BASED PROGRAM GIVEN PRIORITY OVER SEPARATION OF CHURCH VS STATE WHEN OWNERS APPLY FOR GOV'T ASSISTANCE NOW. (MR LEW USED AN EXAMPLE OF THE PRESBYTERIAN HOMES).  HE  SAID HE WOULD FAX YOU A Q AND A ARTICLE REGARDING THE FAITH BASED PROGRAM .  I HOPE YOU RECEIVED THE FAX.

I TOLD MR LEW THAT BBH ALLOWS US TO HOLD ½ HOUR CATHOLIC SERVICES IN THE ROOM WHERE THE SYNAGOGUE IS - FRIDAY MORNINGS; THAT PROTESTANT SERVICES (1 HOUR) HAVE BEEN ALLOWED IN THE PAST IN THE LOBBY AT CHRISTMAS;  ABOUT THE CRUCIFIX IN OUR APT REMOVAL REQUEST ; AND ABOUT HANAKAH SERVICES ALLOWED IN THE LOBBY (24/7 FOR 8 DAYS) WHEN CHRISTMAS CHRISTIAN  ITEMS HAVE BEEN REMOVED BY BBH  IN THE LIKE COMMON AREAS. HE, IN TURN, SAID WITH THE FAITH BASED PROGRAM IN EFFECT, AS OF LATE, (NOT WHEN BBI APPLIED FOR HUD ASSISTANCE); WE SHOULD COME IN ON THE SOLE ANGLE OF HOUSING DISCRIMINATION AT BBH AND THAT THE CORWINS FEEL LIKE A SECOND CLASS CITIZEN AT BBH WITH THEIR RC FAITH, AND THAT THE RULES AT BBH DO NOT APPLY TO EVERYONE (I.E. RELIGIOUS POLICIES ARE NOT EQUALLY APPLIED AT BBH).

WE ARE GLAD YOU THOUGHT IT A GOOD IDEA TO CALL  MR LEW, IN HIS SUGGESTION FOR YOU TO CALL HIM AT 215-656-0649, EXTENSION 3277.

ADDITIONALLY, IT CAME TO ME THIS AM, AS I WAS PRAYING TO THE LORD, THAT IF YOU WERE TO COME IN WITH A HOUSING DISCRIMINATION ANGLE MR LEW SPOKE OF, USING A  BLACK/WHITE DISCRIMINATION COMPARISON, WHICH MR LEW SUGGESTED, IN ORDER TO MAKE IT MORE VISUAL - THAT YOU AND I HAVE  NEVER REALLY HAD A  CONVERSATION AS TO OUR SUBJECTIVE FEELINGS IN BBH'S TREATMENT OF US IN OUR FAITH.  THEREFORE, I HAVE ATTACHED MY SUBJECTIVE FEELINGS IN REGARD TO OUR CHRISTIAN FAITH TREATMENT AT BBH. (SINCE ISIDORE DOCTOR NOTE STATES HE IS UNABLE TO GIVE TESTIMONY ).  THANK YOU.

*JESUS CHRIST FOREVER AND EVER,*
ISIDORE AND BONNIE



## THE WHITE HOUSE

WASHINGTON

January 10, 2006

Dear Mrs. Corwin:

On behalf of President Bush, thank you for your inquiry and interest in the White House Office of Faith-Based and Community Initiatives (OFBCI).

President Bush's Faith-Based and Community Initiative represents a bold new approach to Government's role in helping those in need. Collaborating with Centers for the Faith-Based and Community Initiatives located in various Federal agencies, the OFBCI works to support the essential work of faith-based and community organizations. Its main charge is to ensure that grassroots organizations can compete on a level playing field for Federal dollars.

As you may know, the OFBCI is not a grant-making office. Federal grants are provided by various Federal agencies. For this reason, you should direct specific questions about Federal funding to staff in the Centers for Faith-Based and Community Initiatives within the Federal agencies. Their contact information is enclosed.

For your convenience, the OFBCI offers an online grants catalog called *Federal Funds for Organizations That Help Those in Need*, which lists many grants of interest to faith-based and community organizations. The catalog can be viewed at www.fbci.gov. Our website also lists upcoming technical assistance workshops and contains useful information on developing quality grant proposals.

The Federal government funds a number of social service programs directly through "discretionary" funds. Funding for social services is also channeled through state and local governments in the form of "formula" or "block grants." If you are seeking government funding for your program, you should explore the full range of Federal, state, and local funding options.

We are hopeful President Bush's efforts will permit more faith-based and community organizations to reach out to the poor in our midst and help them lead lives worthy of their dignity. Again, thank you for your interest in the President's Faith-Based and Community Initiative.

Sincerely,

Christopher Lindsay

Christopher A. Lindsay
Staff Assistant
Office of Faith-Based and Community Initiatives

Mrs. Bonnie Corwin
8608 Society Drive
Claymont, Delaware 19703-1749



NOVEMBER 30, 2005

TO: THE HONORABLE THOMAS CARPER, U.S. SENATOR
2215 FEDERAL BUILDING
300 SOUTH NEW STREET
DOVER, DELAWARE 19904-6724

FROM: ISIDORE AND BONNIE CORWIN
8608 SOCIETY DRIVE
BNAI BRITH HOUSE
CLAYMONT, DE 19703, TELEPHONE/FAX 302-798-5116

RE: HOPEFUL STEVEN B. NESMITH'S DIRECTION IN OUR RELIGIOUS-BASED QUESTIONS
AT SECT 8 BNAI BRITH SENIOR HOUSING, CLAYMONT, DELAWARE, ASSISTANT
SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS, U.S.
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, WASHINGTON, DC 20410-1000

DEAR SENATOR CARPER,

AS CONSTITUENTS HERE IN THE STATE OF DELAWARE AND WITH PAST
CORRESPONDENCE TO YOU REGARDING OUR SECTION EIGHT LANDLORD REQUEST THAT
WE REMOVE OUR CRUCIFIX FROM OUR RENTED APARTMENT; AND OUR LANDLORD'S
CALLING OF MANDATORY MEETINGS IN OUR APT BUILDING, WE HAVE ALWAYS
APPRECIATED YOU FORWARDING OUR HUD-CONCERNS TO SECRETARY NESMITH. HE
HAS BEEN AN AUTHORITY TO US TOWARDS RESOLUTIONS. THANK YOU.

WE ARE HOPING THAT YOU COULD FURTHER FORWARD TO MR NESMITH THREE (3)
RELIGIOUS QUESTIONS CONCERNING OUR APT BUILDING. THANK YOU FOR HELPING US.

1) WITHIN OUR BUILDING, IS AN AUDITORIUM SIDE ROOM ON THE LOBBY FLOOR, WHERE
A JEWISH FAITH CONGREGATION HAS ITS SERVICES EVERY FRIDAY AND SATURDAY AND
ON ITS HOLY DAYS. ON THE AUDITORIUM RISER, THE CONGREGATION HAS THE TORA
HOUSED IN A LOCKED CABINET WITH A 24/7 VOTIVE LIGHT AT THE SITE OF THE TORA. IF
THE TORA AND CABINET HAVE A DRAPE OVER IT BETWEEN SERVICES, DOES IT'S
RELIGIOUS ESTABLISHMENT IN THE AUDITORIUM GO AGAINST HUD GUIDELINES?
(THE ROMAN CATHOLIC SERVICES HAVE ACCESS TO THE SAME AUDITORIUM FOR ITS
FRIDAY MORNING COMMUNION SERVICES, BUT HAS NOT BEEN GIVEN THE OPPORTUNITY
FOR FIXED FURNISHING OR TABERNACLE PLACEMENT. WE ARE ROMAN CATHOLIC).

2) CAN THIS SAME JEWISH CONGREGATION, THAT IS ESTABLISHED IN THE AUDITORIUM
WITH FIXED FURNISHINGS, HAVE IT'S MAILING ADDRESS AT THE SECTION 8 BNAI BRITH
HOUSE? IS THIS WITHIN HUD GUIDELINES? (NO OTHER FAITH HAS ITS ADDRESS HERE).

3) IN DECEMBER, BNAI BRITH DISPLAYS A MANURAH, A PROPOSED COMMEMORATIVE
MAZZUZAH FROM A DOORPOST, THE STAR OF DAVID AND NOISE MAKERS IN THE LOBBY
FOR HANAKAH. IT AFFORDS A GENERIC CHRISTMAS TREE, A 5-POINT STAR , A
REINDEER FIGURE AND SNOWMAN FIGURE FOR CHRISTIANS IN THE LOBBY. IT REFUSES
FOR A CRECHE TO BE PLACED UNDER THE GENERIC CHRISTMAS TREE (IN 2004, BBH
REMOVED A CRECHE FROM UNDER THE TREE AND THREW IT IN THE TRASH). BNAI BRITH
HOUSE WILL APPROVE A CRECHE DISPLAY IN A SIDE ROOM FOR THE CHRISTMAS
HOLIDAY, AWAY FROM THE LOBBY. IS THIS HOUSE RULE WITHIN THE HUD AND
SUPREME COURT GUIDELINES?

THANK YOU FOR CONSIDERING OUR QUESTIONS. (WE HOPE, IF POSSIBLE, THAT WE
COULD RECEIVE A RESPONSE BEFORE THE HOLIDAYS). *ISIDORE AND BONNIE CORWIN*



# CONFIDENTIAL HAND-CARRIED LETTER TO:

DECEMBER 1, 2005

## TO: THE HONORABLE GREGORY M. SLEET
U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
920 NORTH KING STREET
WILMINGTON, DELAWARE
TELEPHONE 573-6470

## RE: CIVIL ACTION NO. 04-1499
CORWIN VS. BNAI BRITH SENIOR CITIZEN HOUSING, INC ET AL

## FROM: ISIDORE AND BONNIE CORWIN, PLAINTIFFS
BNAI BRITH SENIOR APT COMPLEX
8608 SOCIETY DRIVE
CLAYMONT, DELAWARE 19703
TELEPHONE/FAX 302-798-5116

DEAR JUDGE SLEET,

WE WANTED TO INFORM YOU THAT WE HAVE DISMISSED BOTH OUR ATTORNEYS AND
TODAY REQUEST RESPECTFULLY, OF THE COURT, TIME TO FIND ANOTHER ATTORNEY IN
OUR CIVIL ACTION; TO ENTER IN OUR BEHALF, AND IN ALL FAIRNESS TO THE TRIAL
PROCESS AND OUR RIGHT TO A FAIR TRIAL BY JURY.

THE REASON WE HAVE RELIEVED OUR ATTORNEYS PRIOR TO THE SIGNING OF AN
AGREED SETTLEMENT; AFTER CONTEMPLATING THE SETTLEMENT, BUT BEFORE THE
(THE ORAL SETTLEMENT WOULD BE ORDERED TO GO INTO EFFECT), ARE:

WE BELIEVE WE WERE NOT ADEQUATELY REPRESENTED BY HOST COUNSEL MARTIN AT
THE MEDIATION CONFERENCE (FACT STIPULATED BELOW); WE WERE INTIMIDATED BY
THE MEDIATION JUDGE THYNGE AT MEDIATION CONFERENCE (FACT STIPULATED
BELOW); WE WERE NOT ADEQUATELY REPRESENTED BY TRIAL COUNSEL FERRARA AT
CONFERENCE (FACT STIPULATED BELOW); WE WERE DECEIVED WITH ONE OF THE
STATEMENTS BY ONE OF THE DEFENDANTS AT CONFERENCE (FACT STIPULATED
BELOW); AND WE BELIEVE THAT TWO AREAS OF VERBAL SETTLEMENT AGREEMENT
ARE AGAINST HUD LAW (FACT STIPULATED BELOW):

+ATTORNEY JEFF MARTIN TOLD US HE DID NOT WANT TO TAKE THE CASE IN FRONT OF
JUDGE SLEET FOR OUR RIGHT TO TRIAL BY JURY BECAUSE OF HIS PAST HISTORY WITH
JUDGE SLEET AND THE (MR MARTIN'S) REPORTED NUMEROUS UNMERITED SUMMARY
JUDGMENTS SIGNED BY THE JUDGE.

+AT CONFERENCE, JUDGE THYME TOLD US, AND MAKING A POINT OF IT, IN FRONT OF
ATTORNEY MARTIN, AND IN OUR PRESENCE, OF JUDGE SLEET'S (VERY) RECENT RECORD
IN SIGNING, AND THE MENTIONING OF CASES, IN TWO MORE SUMMARY JUDGMENTS.

+TRIAL COUNSEL FERRARA WAS TIMID AND DID NOT ADEQUATELY REPRESENT US AT
CONFERENCE IN OUR REQUEST FOR A CRÈCHE SCENE PLACEMENT IN THE BNAI BRITH
HOUSE FACILITY'S LOBBY AT CHRISTMAS, (ACCORDING TO SUPREME COURT CASE LAW
AND A CRITICAL COMPLAINT BY US), BUT AGREED TO HAVE CRECHE PLACEMENT IN A
SIDE ROOM PER DEFENDANT'S BNAI BRITH'S SENIOR HOUSING INC. DEMANDS.

PAGE 1 OF 2



+BNAI BRITH SENIOR HOUSING PRESIDENT SCHLECKER DECEIVED US IN THE CONFERENCE THAT THERE ARE NO RELIGIOUS OBJECTS HANGING IN THE AUDITORIUM WHERE THE ESTABLISHED JEWISH CONGREGATION MEETS AT THE BNAI BRITH HOUSE. HOWEVER, POST CONFERENCE, WE CAME TO FIND OUT THAT THERE, IN FACT, IS A HANGING RELIGIOUS OBJECT WITH OLD TESTAMENT SCRIPTURE POSTED IN THE AUDITORIUM, A CONTENTION AT CONFERENCE.

+HUD LAW , WE COME TO FIND OUT POST CONFERENCE, DOES NOT PERMIT THAT A FIXED RELIGIOUS OBJECT, A TORA IN THE CASE OF BNAI BRITH SR HOUSING, THAT IS PERMITTED REMAIN "FIXED" (IN THE SETTLEMENT TERMS),  BY THE ESTABLISHED HEBREW CONGREGATION AT BNAI BRITH HOUSE,  WHICH IS A SECTION EIGHT COMPLEX. (LANDLORDS MUST ALSO GIVE ALL TENANTS THE SAME PRIVILEGES.  A LANDLORD CANNOT LIMIT THE USE OF BUILDING AMENITIES SUCH AS COMMUNITY ROOMS, GYMS, ETC. BASED ON PERSON'S RACE, RELIGION, OR NATIONAL ORIGIN. www.hud.gov/offices/fheo/library/sept11.cfm).

~WE INFORMED OUR TRAIL ATTORNEY FERRARA ON SUNDAY, NOVEMBER 27, 2005, AFTER CONTEMPLATING THE SETTLEMENT, AND BEFORE THE SIGNING A PRINTED SETTLEMENT, THAT WE DID NOT WANT TO SETTLE.
~WE INFORMED OUR HOST ATTORNEY MARTIN ON TUESDAY, NOVEMBER 29, AFTER CONTEMPLATING THE SETTLEMENT, THAT WE DID NOT WANT TO SETTLE.
~WE INFORMED THE U.S. DISTRICT COURT CLERK, ON WEDNESDAY, NOVEMBER 30, AFTER CONTEMPLATING THE SETTLEMENT, THAT WE DID NOT WANT TO SETTLE.
~WE INFORMED JUDGE THYME'S OFFICE, ON WEDNESDAY, NOVEMBER 30, AFTER CONTEMPLATING THE SETTLEMENT, OF OUR NEED THAT WE DID NOT WANT TO SETTLE.

RESPECTFULLY SUBMITTED,
PLAINTIFFS ISIDORE AND BONNIE CORWIN


DATED _____

*ORIGINAL* HAND-CARRIED ON DECEMBER 1, 2005 TO JUDGE SLEETS CHAMBERS PER CLERK
CC:
ATTORNEY MARTIN
1509 GILPEN AVENUE
WILMINGTON, DELAWARE 19806
FAX 302-777-4682

ATTORNEY FERRARA
420 RTE 46 EAST, SUITE 7
PO BOX 10092
FAIRFIELD, NEW JERSEY 07004
FAX 973-244-9897

ATTORNEY EDELSTEIN
7742 SPALDING DRIVE, SUITE 478
NORCROSS, GEORGIA 30092
FAX 770-840-9492

ATTORNEY WILKS
1007 N. ORANGE STREET, SUITE 1110
WILMINGTON, DELAWARE 19801
FAX 302-428-3996

JUDGE THYNGE
U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
920 NORTH KING STREET
WILMINGTON, DELAWARE
TELEPHONE 573-6173



TO: ATTORNEY FERRARA AND ATTORNEY MARTIN
RE: *U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE.  CIVIL ACTION 04-1499*
**IMMEDIATE ATTN:**  LEGAL INTERVENTION IN AGREED VERBAL SETTLEMENT
DATE: NOVEMBER 29, 2005

FROM: ISIDORE AND BONNIE CORWIN
     WE INFORMED ATTY FERRARA IN A TELEPHONE CALL THIS PAST SUNDAY, THAT
WE NOW DON'T WANT TO SETTLE  AND SO DID SO *BEFORE* THE PRINTED SETTLEMENT IS
PUT BEFORE THE PARTIES TO SIGN.

     AS WE HAVE COME TO REALIZE, SOME OF THE POINTS IN THE  AGREED VERBAL
SETTLEMENT ARE  GLARING TO US SINCE THEY ARE NOT RESPONSIVE TO REMOVING
COMPLETELY OUR CHRISTIAN OPPRESSION HERE AT THE BBH AND BY BBH.

     THEREFORE, WOULD YOU BE SO KIND TO INFORM THE COURT OF OUR CHANGE OF
MIND AND OUR REQUEST THAT OUR ATTORNEYS DO NOT  SIGN THE  PRINTED
SETTLEMENT DOCUMENT REPRESENTING US IN THIS LAWSUIT.

     ATTY  FERRARA DOESN'T WANT TO PURSUE OUR SETTLEMENT ADJUSTMENT
NEEDS.  NEVERTHELESS, WE ARE STRIVING TO FIND PEACE IN OUR LIVING AT BBH WITH
THE LAWSUIT AND WITHOUT RELIGIOUS FAVORITISM AT BBH.  AND,  AFTER REVIEWING
THE AGREEMENT OVER THE WEEKEND, WE FIND THE AGREED VERBAL SETTLEMENT IS
IN OPPOSITION TO THIS  GOAL.  IF ATTY FERRARA WANTS TO PULL OUT OF THE CASE,  WE
NEED TIME FROM THE COURT TO GET A NEW ATTORNEY TO REPRESENT US.

AGREED VERBAL SETTLEMENT POINTS WE OPPOSE:

*1.  FIXED TORA BELONGING  TO  A JEWISH CONGREGATION  IN THE POTTER*
*AUDITORIUM IN  A HUD SUBSIDIZED APT BUILDING, WHERE ONE PARTICULAR FAITH,*
*PER HUD,  IS NOT TO DICTATE THE FAITH IN  ANY  "FIXED WAY," AND WHERE IT IS*
*IMPOSSIBLE FOR THE ROMAN CATHOLICS TO MOVE IN A FIXED TABERNACLE, UNDER*
*OUR DIOCESE RULES, TO GIVE US THE EQUAL ACCESS WITH A  RELIGIOUS SACRED*
*OBJECT IN THE POTTER AUDITORIUM.*

*2.  NO DAMAGE FEES FOR OUR EMOTIONAL TRAUMA IN OUR  RELIGIOUS*
*DISCRIMINATION  COMPLAINT, WHERE SUGGESTED TO OFFSET MORE HOSTILITY*
*TOWARDS US BY SOME PARTICULAR TENANTS IN THE BLDG, WE AGREED NOT TO ASK*
*FOR PUNITIVE DAMAGES AT SETTLEMENT.   IN RETROSPECT, WE ARE NOT GOING TO LET*
*FEAR  RUN OUR LIVES AND THE MONEY DAMAGES WE BELIEVE ARE DUE TO US BY BBH.*

*3.  BBH PERMITTING A FRAMED MAZZUZAH;  JEWISH NOISE MAKER;  MANURAH;STAR OF*
*DAVID IN  LOBBY TO REPRESENT HANAKAH;  BUT WILL NOT PERMIT THE  CHRISTMAS*
*TREE TO HAVE A NATIVITY SCENE REPRESENT CHRISTMAS,  (WHICH APPARENTLY IS*
*PERMITTED IN  SUPREME COURT CASE LAW IF A GENERIC REINDEER, FOR INSTANCE, IS*
*INCLUDED IN THE DISPLAY).  BBH WANTS THE  NATIVITY SCENE TO BE RELINQUISHED*
*TO THE POTTER AUDITORIUM  FOR CHRISTMAS.*

IF YOU WANT TO COMMUNICATE, WE ARE AVAILABLE THRU FAX , US MAIL, OR MESSAGE
MACHINE AT THIS POINT, AS WE HAD TO CURTAIL OUR CONVERSATION WITH
ATTORNEY FERRARA BECAUSE OF THE PERSONAL AND FALSE ACCUSATIONS HE MADE
TO US  ON SUNDAY;  WHEN ALL WE INNOCENTLY WANTED WAS TO NOTIFY HIM OF OUR
CHANGE OF MIND IN THE AGREED VERBAL SETTLEMENT.  IN FACT, HIS  TALK WORE ME
DOWN TO A POINT, WHERE I WAS APOLOGIZING TO *HIM.*   BUT NOW THAT I HAVE
REGAINED MY EQUILIBRIUM, WE ARE READY TO MOVE FORWARD.          THANK YOU.



JANUARY 26, 2006

DEAR ATTORNEY EDELSTEIN,

I DID NOT LOOK OVER THE DRAFT TO THE TENANTS YOU HAD WITH YOU YESTERDAY, BUT I DO KNOW WE MUST SEE THE BELOW STATEMENTS (1-5) OR LIKE-STATEMENTS INCORPORATED IN THE BBH RELIGIOUS POLICY LETTER TO THE TENANTS . PLUS, ISIDORE AND I DO NOT WANT TO HAVE OUR NAME MENTIONED, CASE MENTIONED, OR THAT WE (THE CORWINS) SETTLED; ESPECIALLY SINCE THIS LETTER MIGHT BE BROUGHT TO THE ATTENTION OF FUTURE RESIDENTS WHO WILL RENT AT BBH. WE ARE HOPING THE LETTER CAN GO OUT WITH THE MARCH NEWSLETTER 2006 AND DOOR TO DOOR, RUSSIAN INTERPRETED. THANK YOU.

1. ANY PERSONAL NON-RELIGIOUS OR RELIGIOUS DECORATIONS PLACED AT A BBH TENANT'S UNIT FRONT DOOR IS CONSIDERED BY BBH AS PRIVATE AND IS NOT OF BBH'S CONCERN, THE DECORATION MUST BE LIMITED TO THE DOOR, HOWEVER, AND MAY NOT EXTEND ONTO THE HALL WALLS; AND WITH NO TENANT-EXCEPTIONS TO THIS RULE. ANY VIOLATIONS IS WHERE ANY TENANT WILL RECEIVE MGMT NOTICE , WITH A 30-DAY PERIOD TO COMPLY.

2. ANY HANGING NON-RELIGIOUS OR RELIGIOUS DECORATIONS PLACED ON A BBH TENANT'S UNIT BALCONY IS CONSIDERED WITHIN THE GUIDELINES OF THE BBH RULES, IF PLACED ON THE BALCONY PRIOR TO MAY 15, 2004 *(EACH BALCONY HAS BEEN PHOTOGRAPHED AT THAT TIME WITH THEIR HANGING DECORATIONS).* HOWEVER, POST MAY 15, 2004, ALL TENANTS MUST ABIDE BY THE MOST RECENT BALCONY HOUSE RULES (SEE YOUR BBH RULES BOOKLET FOR DETAILS OR COME TO THE BBH OFFICE FOR A COPY OF THE 2005 BALCONY HOUSE RULE).

3. THE COMMON AREAS ON THE FIRST FLOOR OF THE BBH WILL REMAIN NEUTRAL IN RELIGION THROUGHOUT THE YEAR. ONLY ITEMS PLACED BY MANAGEMENT WILL BE PERMITTED TO BE ON DISPLAY THAT ARE CONSIDERED "GENERIC" OR "NEUTRAL" PER THE SUPREME COURT OF OUR LAND, SUCH AS A CHRISTMAS TREE, MANURAH, STAR OF DAVID, ETC. ANY RELIGIOUS DECORATION DISPLAYED IN THE LOBBY WILL BE REMOVED AND PLACED IN A DESIGNATED PICK-UP BOX IN THE POTTER AUDITORIUM.



4. ANY TENANT, TENANT ASSOCIATION, CHURCH, INDIVIDUAL, MOSQUE, TEMPLE, ORGANIZATION, WHO WISHES TO HAVE A SEASONAL RELIGIOUS DISPLAY OR SEASONAL RELIGIOUS SERVICES AT BBH WILL BE PERMITTED TO DO SO IN THE POTTER AUDITORIUM. ALL MUST REGISTER ITS DISPLAY OR SERVICES AT THE BBH OFFICE WITH THE PARTICULARS, PLUS CONTACT NAME AND ADDRESS FOR THE ACTIVITY. ANY RELIGIOUS SERVICES/DECORATIONS WILL HELD IN A DESIGNATED AREA OF THE POTTER AUDITORIUM FOR A PERIOD OF 1 DAY AND NOT MORE THAN 30 DAYS. ARRANGEMENTS FOR SET UP AND TAKE DOWN BY THE INDIVIDUAL OR OWNER MUST BE MADE AT THE OFFICE. A SCHEDULE OF *"POTTER AUDITORIUM ACTIVITIES"*, WITH THE DATES AND THE DESCRIPTION, WILL BE POSTED ON THE BBH MAIN BULLETIN BOARD IN THE LOBBY.

WARNING: ANY INTERFERENCE WITH ANY RELIGIOUS DISPLAY OR ANY RELIGIOUS SERVICES IN THE POTTER AUDITORIUM OR ANY HARASSMENT OR IMPROPER STATEMENT TOWARD ONE PARTICULAR FAITH OR ANY VANDALIZING OF ANY RELIGIOUS DISPLAY THAT IS IN THE POTTER AUDITORIUM BY ANY INDIVIDUAL/S MAY RESULT IN AN ARREST/CONVICTION THAT CAN BE INITIATED BY THE RELIGIOUS DISPLAY OR RELIGIOUS SERVICES ORGANIZER/S, WHO ARE SOLELY RESPONSIBLE FOR THE THEIR ACTIVITY IN THE POTTER AUDITORIUM. SUCH COMPLAINT MUST GO THROUGH THE APPROPRIATE AUTHORITIES. BNAI BRITH SENIOR HOUSING WILL NOT ACCEPT THE COMPLAINT AND WILL NOT BE HELD RESPONSIBLE.

5. FLOOR ONE (1) THRU SEVEN (7) COMMON AREAS, WILL REMAIN "NEUTRAL" IN RELIGION THROUGHOUT THE YEAR. DECORATION MAY BE PLACED BY TENANTS ON THE TABLES IN THESE AREA, NOT ON THE FLOOR. ANY RELIGIOUS ITEM DISPLAYED ON THESE FLOOR TABLES WILL BE REMOVED BY BBH AND PLACED IN A DESIGNATED PICK-UP BOX IN THE POTTER AUDITORIUM.

SINCERELY,

ISIDORE AND BONNIE CORWIN

P.S. *WE WILL GIVE YOU COPIES OF ALL BALCONY DIGITAL PHOTOS AT BBH, IF REQUESTED.*



## Exhibit A

## NOTICE TO ALL RESIDENTS OF B'NAI B'RITH HOUSE

During the past holiday season, many of you noticed a number of changes taking place in B'nai B'rith House relative to religious displays and religious services in the building. Many of you are also aware that B'nai B'rith House has been involved in a lawsuit brought by two of our residents who claimed that we discriminated against them on the basis of their religion. **We are happy to report that this lawsuit has been amicably settled.**

While waiting for the settlement to become final, B'nai B'rith House decided to begin making some changes immediately, partly in reliance on the settlement agreement but also because we wish to continue our commitment to ensuring that the fair housing rights of every resident in this building are fairly recognized and respected.

As a result, B'nai B'rith House has implemented the following policies and procedures, which will be made a part of the House Rules in due course.

1. Religious items of any kind, including symbols, displays, magazines and literature, will not be permitted in any of the common areas.

2. Religious services will not be permitted in any of the common areas. However, during the Christmas and Hanukah seasons, BBH will continue to allow residents to display a Christmas tree and Menorah along with other non-religious seasonal decorations.

3. Announcements of religious services will continue to be permitted on the BBH bulletin board and in its newsletter but will be prohibited in any other common areas.

4. Residents who wish to conduct religious services on the premises will be permitted to conduct such services in the Potter Auditorium only. BBH will continue to allow religious services to be conducted in the Potter Auditorium in a manner that ensures equal access to residents of all religions.

5. BBH will continue to accept for publication in our newsletter all announcements of religious services in the Potter Auditorium. Residents will also continue to be allowed to place announcements of religious services in resident cubbyholes.

6. BBH will continue to allow residents to display religious symbols and images of their choice (Mezuzahs, Crucifixes, etc.) on the outside of their apartment doors and on their individual mailboxes.

Lastly, it is important that we respect the dignity of all other residents in our community, especially those with whom we disagree. It is also important that each and every resident of BBH understand that federal and state laws make it illegal to harass or retaliate against anyone. We cannot overemphasize how important it is for all residents to avoid any conflict or potential conflict that could be construed as harassment or retaliation.

If you have any further questions or concerns about this matter, please feel free to contact me privately.


Lynne Rotan, Manager

Date:



1

1    -

2                IN THE UNITED STATES DISTRICT COURT

3                IN AND FOR THE DISTRICT OF DELAWARE

4                         -   -   -

5    ISADORE CORWIN and          :      Civil Action
     BONNIE CORWIN,              :
6                                :
                  Plaintiffs,    :
7                                :
           v.                    :
8                                :
     B'NAI B'RITH SENIOR         :
9    CITIZEN HOUSING, INC.,      :
                                 :
10                Defendant.     :      No. 04-1999-GMS

11                         -   -   -

12                   Wilmington, Delaware
                 Wednesday, November 23, 2005
13                       4:55 p.m.
                     In Chambers

14                         -   -   -

15   BEFORE:  HONORABLE MARY PAT THYNGE, U.S.M.J.

16

17   APPEARANCES:

18           JEFFREY K. MARTIN, ESQ.
             Margolis Edelstein
19                   -and-
             CHRISTOPHER A. FERRARA, ESQ.
20           (Fairfield, N.J.)

21                         Counsel for Plaintiffs

22           STEVEN J. EDELSTEIN, ESQ.
             Coughlin, Kitay & Edelstein
23           (Norcross, GA)

24                         Counsel for Defendant

25

1              As for the non-common areas, doors, the doors of

2      apartments, including exterior surfaces of these doors in

3      the hallways are part of the residence of each person.  So

4      religious expression will not be restricted as to the door

5      frames on the exterior portion or the surface of the door

6      itself.

7              If people want to put up crucifixes, mezuzahs,

8      religious arts, so forth, they are free to do so, because

9      that is their personal space.

10             Inside the apartment, it is cart blanche as to

11     religion.

12             On the balconies, likewise, people can have

13     religious symbols and expressions, as long as it doesn't

14     present a safety hazard, which we would define as anything

15     that would prevent ingress or egress because of anything on

16     the balcony in the event of fire or other dangers.  But

17     otherwise, people can use their balconies for religious

18     symbols.

19             (Discussion off the record.)

20             MR. FERRARA:  Let me rephrase my previous

21     statement.  What we are actually going to say here is that

22     all of the things that are hanging on balconies now,

23     pinwheels, flower boxes, and the Corwins' crucifix, which is

24     the subject of this lawsuit, all of those things are

25     acknowledged to be in compliance with any existing house

1   rules, including the hanging items rule pertaining to

2   balconies, and none of those items would be removed, not the

3   crucifix or any of the other items hanging as of today.

4           That covers the apartment doors.

5           The interior, of course, is freely·available for

6   religious use, hanging religious items on the walls and so

7   forth.

8           In terms of the newsletter, it's agreed that

9   explicitly religious themes are not appropriate for the

10   newsletter.  So if there is some kind of generic holiday

11   symbol, like a menorah or Christmas tree, that is okay.  But

12   as far as theological explanations of the Hannukah miracle

13   or theology of the Nativity of Christ or anything explicitly

14   religious, to avoid future problems, the newsletter will be

15   kept religiously neutral.

16           As far as religious literature, neither

17   religious literature or any other literature will be left on

18   the tables in the lobby by tenants or management.  If any

19   such literature is found, regardless of who places it, it

20   will be removed immediately.  So we have religious

21   neutrality as to the placement of literature in the common

22   areas, tables, racks or whatever.

23           Likewise, the tenants have the right with

24   respect to their mailboxes to affix little expressions of

25   religion, because those are considered extensions of their

JANUARY 27, 2006

ISIDORE AND BONNIE CORWIN
BNAI BRITH HOUSE
8000 SOCIETY DRIVE
APT 608
CLAYMONT, DE 19703-1749
TELE/FAX 302-798-5116

DEAR MR EDELSTEIN,

      THANK YOU, AS DEFENDANTS' COUNSEL, FOR FAXING THE DRAFT OF THE
SETTLEMENT IN **CORWIN VS BNAI BRITH**, TO US FOR OUR REVIEW, PER STATUS
HEARING HELD ON JANUARY 25, 2006 AT U.S. DISTRICT COURT IN DELAWARE.

      AS YOU WILL FIND IN THE RETURN DRAFTS TO YOU, WE MADE CORRECTIONS
AND ADDITIONS TO YOUR ORIGINAL DRAFTS. THE CORRECTIONS AND CHANGES CAME
OUT OF THE FACT FIND CONFERENCE, THE MEDIATION CONFERENCE, AND STATUS
HEARING PROMISES.

      YOU STATED TO ME ON THE TELEPHONE ON JANUARY 26, 2006, NOT TO MAKE
TOO MANY CHANGES ON YOUR DRAFT; BUT, TO REPEAT, WE WANT IT **RIGHT (AND
CLEAR).** WE BELIEVE THE CIVIL ACTION IS DESERVING OF THIS FOR ALL PARTIES, AND
FOR THE TENANTS. WHAT (THE TENANTS) DO WITH (THE LETTER OF INFORMATION)
AFTER (THEY RECEIVE IT) - IS IN (YOUR) BALL PARK.

      THE HONORABLE JUDGE GREGORY M. SLEET OF U.S. DISTRICT COURT OF
DELAWARE, THE PRESIDING JUDGE IN OUR CIVIL ACTION, TOLD US THAT HE
ANTICIPATES THAT WE WILL HAVE NO PROBLEM DRAFTING THE LETTER TOGETHER. HIS
REMARK WAS ONE OF CONFIDENCE.

SINCERELY,
*ISIDORE AND BONNIE CORWIN,* PLAINTIFFFS

P.S. REGARDING THE MAZZUZAH OFF THE BBH FRONT DOOR POST: ENCLOSED PLEASE
FIND GOOGLE SEARCH FOR MEZZUZAH, PAGE 2 OF 7, THIRD PARAGRAPH DOWN WHERE,
IN PRINT, IT REGARDS THE MEZZUZAH, EVEN WHEN NOT ACTIVELY USED IN A
DWELLING, STILL AS AN OBJECT OF RELIGIOUS SIGNIFICANCE. THAT IS WHY, IN
REGARDS TO YOUR NEUTRAL POLICY AT BBH AND WITH RESPECT FOR THE JEWISH FAITH
MEZZUZAH, WE FIRMLY BELIEVE THE COMMEMORATIVE MEZZUZAH SHOULD HANG IN
THE POTTER AUDITORIUM (OR LODGE BOARD ROOM, OR BBH OFFICE; BUT NOT IN A
DESIGNATED NEUTRAL COMMON AREA AT BBH).....*AND,* SINCE WE ALREADY HAVE
CONCEDED, (TO PREVENT A GLITCH IN THE SETTLEMENT IN OUR CIVIL ACTION), TO
ALLOW A COMMEMORATIVE PLAQUE WITH OLD TESTAMENT SCRIPTURE IN THE LOBBY.



ENC: JUDAISM 101

DATED:01/29/06
DEAR MR EDELSTEIN, BNAI BRITH & MRS ROTAN, DEFENDANTS COUNSEL:

WHILE WE ARE ACTIVELY DRAFTING THE BBH LETTER TO THE TENANTS TOGETHER, AND IN REGARD TO THE SETTLEMENT OF OUR FILED LAWSUIT WITH BNAI BRITH, WE WANT TO SAY THAT WE VERY UNCOMFORTABLE WITH ONE AREA OF DISCUSSION AND CONCLUSION WE CAME TO IN THE U.S. DISTRICT COURT JUDGE'S PRESENCE REGARDING SETTLEMENT ON JANUARY 25, 2006.

WE ARE HOPING WE CAN RESOLVE THIS RESENTMENT WE HAVE IN THIS ONE AREA, AS THE PLAINTIFFS, PRIOR TO FEBRUARY 6, 2006; THE DATE WE ARE OBLIGED TO HAND IN THE SIGNED SETTLEMENT PAPERS TO THE COURT; BECAUSE AS FAR AS WE ARE CONCERNED, THIS PARTICULAR AREA IS A VERY UNFAIR CONCLUSION WE ALL CAME TO THAT DAY AND IT HAS BEEN EATING AT US, WHERE WE MUST PUT IT INTO WORDS TO YOU TODAY.

(WE DON'T KNOW WHETHER WE CAN APPEAL A SETTLEMENT, OR WHETHER WE CAN FILE ANOTHER COMPLAINT AT U.S. DISTRICT COURT IN THIS ONE AREA, BUT YOU CAN SEE BY OUR LOOKING AT VARIOUS OPTIONS, THAT THIS ONE AREA OF CONTENTION IS VERY, VERY SERIOUS TO US); AND WE HOPE, AS WE SAID BEFORE, IT CAN BE RESOLVED BEFORE FEBRUARY 6, 2006.

*HERE IS THE AREA:* IN OUR SETTLEMENT, WHY CAN A JEWISH CONGREGATION REMAIN TO BE ESTABLISHED *YEAR-ROUND* AT THE BNAI BRITH HOUSE IN ADDRESS AND BODY, WHICH GIVES THE APPEARANCE OF ONE RELIGION DICTATING THE FAITH OF THE BBH BUILDING AND WITH THE APPROVAL OF THE BNAI BRITH HOUSE OWNERS, AND WHEN NO OTHER FAITH IS ESTABLISHED AT BBH IN ADDRESS, WHICH IS AGAINST HUD LAW, **BUT....** A BNAI BRITH HOUSE TENANT SIMPLY IS NOT PERMITTED TO DISPLAY HIS OR HER OWN FAITH *TEMPORARILY (NOT YEAR ROUND)*, IN THE BBH LOBBY DURING THE HOLY DAYS OF CHRISTMAS AND HANAKAH ONLY; AND ACCORDING TO THE LAW OF THE LAND? (THIS IS WHERE BBH STATES A RELIGIOUS DISPLAY FOR THOSE TWO (2) HOLY DAYS MUST BE AWAY FROM THE HOLIDAY SETTING IN THE LOBBY, (A SETTING OF A MANURAH AND CHRISTMAS TREE), AND SUCH DISPLAY MUST GO INTO THE POTTER AUDITORIUM). **IT ISN'T FAIR!**

WITH A SUGGESTED NATIVITY SCENE OR JEWISH-FAITH CANDLELIGHT DISPLAY TEMPORARILY DISPLAYED WITHIN A HOLIDAY SETTING IN THE BBH LOBBY EACH YEAR, (WHEN RELIGIOUS SONGS ARE ALREADY PERMITTED TO BE SUNG DURING CHRISTMAS IN THE LOBBY), WE ARE SURE, FOR THAT SHORT PERIOD OF TIME (APPROXIMATELY ONE MONTH), YOU COULD RELAX YOUR NEUTRAL POLICY AT BBH, FOR THE LOBBY ONLY, AND FOR THE GOOD OF ALL.

MAYBE IT WOULD BE A BBH INCONVENIENCE TO ASSURE EQUAL ACCESS TO ALL FAITHS DURING ONE MONTH IN THE LOBBY, BUT WE BELIEVE IT IS A TRUE INCONVENIENCE TO ASK MANY BBH SENIOR TENANTS TO WALK OR ROLL DOWN THE HALL IN THEIR WHEELCHAIRS TO THE POTTER AUDITORIUM DURING HANAKAH AND CHRISTMAS IN ORDER TO HAVE THE ABILITY TO BECOME APART OF A HANAKAH OR CHRISTMAS RELIGIOUS DISPLAY.

THEREFORE, WE ARE ASKING THAT YOU SERIOUSLY RECONSIDER THE STIPULATION AGREEMENT AND THE LETTER TO THE TENANTS TO RELECT A UNITY OF FAITHS IN WORD & ACTION FOR THE BBH LOBBY - FOR THE SEASONS OF CHRISTMAS AND HANAKAH ONLY.

SINCERELY,
ISIDORE AND BONNIE CORWIN, PLAINTIFFS
U.S.DISTRICT COURT CIVIL ACTION 04-1499





THE LAW FIRM OF
## COUGHLIN, KITAY & EDELSTEIN
A PROFESSIONAL CORPORATION
7742 SPALDING DRIVE
SUITE 478
NORCROSS, GEORGIA 30092
770.840.8483 • FAX 770.840.9492

KATHELENE WILLIAMS COUGHLIN*
THERESA L. KITAY±
STEVEN J. EDELSTEIN*

4750 LINCOLN BOULEVARD
SUITE 483
MARINA DEL REY, CA 90292
310.578.9134 • FAX 770.454.0126

## VIA FEDEX OVERNIGHT

January 30, 2006

Mrs. Bonnie Corwin
B'nai B'rith House
8000 Society Drive, Apt. 608
Claymont, DE 19703

Dear Mrs. Corwin:

Enclosed for Mr. Corwin's and your signature is the final Stipulation of Settlement and Notice to Residents.

You will see from these documents that my clients incorporated a number of the changes you suggested we make to the draft agreement and notice I faxed to you last week. You will also see that many of the changes you suggested could not be made because those changes do not comport with the terms of the agreement we reached with the magistrate judge on November 23, 2005 and with Judge Sleet at the hearing on January 25, 2006.

In order to conclude this litigation, please sign your names on Plaintiffs' signature page, then mail that page back to me in the enclosed, self-addressed stamped envelope. I have included an extra copy of both documents for your files. After I receive your executed signature page, I will attach it and an executed Defendants' signature page to the agreement and notice and file those with the court. You will receive a copy of the entire agreement and notice after they are filed.

Thank you again for your cooperation.

Very truly yours,

Steven J. Edelstein
For the Firm

COPY

---

* ADMITTED IN GEORGIA
± ADMITTED IN GEORGIA AND CALIFORNIA

JANUARY 31, 2005

ISIDORE AND BONNIE CORWIN
8608 SOCIETY DRIVE
BNAI BRITH HOUSE
CLAYMONT, DELAWARE 19703-1749
TELE/FAX 302-798-5116

RE: <u>CORWIN VS. BNAI BRITH SENIOR HOUSING & LYNNE ROTAN</u>

DEAR MR EDELSTEIN,

WE RECEIVED BY MAIL WHAT YOU SEE AS THE FINAL DRAFT OF OUR LAWSUIT'S
STIPULATION AND THE FINAL DRAFT OF THE LETTER TO THE BBH TENANTS, ASKING FOR
OUR SIGNATURE. WE DO NOT AGREE WITH THE DRAFTS.    WITH A FILING DEADLINE OF
<u>FEBRUARY 6, 2006, 4:30 PM,</u> AT U.S. DISTRICT COURT IN DELAWARE, AND WITH TODAY'S
DATE BEING JANUARY 31, 2006, PLEASE, IF YOU WOULDN'T MIND, INCORPORATING INTO
THE FINAL DRAFTS THESE NECESSARY CHANGES, (SAID CHANGES DUE TO YOUR TO
YOUR OFFICE BY WEDNESDAY, FEBRUARY 1, 2006) AND WITH OUR CONTINUING EFFORT
TO WORK TOGETHER AGAIN WITH YOU ON THESE CHANGES.

<u><b>NECESSARY CHANGES TO STIPULATION BEFORE FINAL :</b></u>

<u>P.1; LINE 1:</u> AMICABLY SETTLED THIS COMPLAINT, *IN PART.*\*

<u>P.1; LINE 9:</u> POSTERS, DECORATIONS, AND *LITERATURE (OR SYMBOLS.* REMOVED*).*

<u>P.1; LINE 10:</u> FIRST SENTENCE STANDS ALONE.

<u>P.1; LINE 11, 12, 13:</u> *OMIT.*\*

<u>P.1; LINE 14 NEEDED:</u> *THE FRAMED HEBREW WRITING IN THE LOBBY THAT STATES "WHEN WE
ENTER INTO THE MONTH OF ADAR, WE INCREASE IN JOY", WILL BE REMOVED.*

<u>P.2; LINE 6:</u> FOUNDERS OF BBH *AND PLACED IN A NON-COMMON AREA OF THE BLDG[1]* .

<u>P.2; LINE 22:</u> RELIGIOUS *EVENTS (*OMIT *SERVICES )[2].*

<u>P.3; LINE 1:</u> *HOWEVER (OMITTED).*

<u>P.3;  LINE 2:</u> (SEPARATE SENTENCE). *TEMPORARY SIGNS FOR ANY RELIGIOUS SERVICE MAY
BE USED TO ... ....*

<u>P. 3; LINE 7:</u> PORTABLE ALTER FOR MASS *OR COMMUNION SERVICE,* WILL BE ENCLOSED...

<u>P. 3; LINE 14:</u> THEIR BALCONY WALL, *AND PLAINTIFFS' OTHER FURNISHINGS ON THEIR
BALCONY, AS WELL AS ALL BBH TENANTS' FURNISHINGS ON THEIR BALCONY, WILL BE
PERMITTED TO REMAIN, IF PLACED THERE PRIOR TO THE COMPLAINT DATE OF THIS
LAWSUIT.[3] (DECEMBER 7, 2004)*

<u>P.3; LINE 22 NEEDED:</u> *DEFENDANT ROTAN AGREES TO PROFESSIONAL BEHAVIOR, AS THE
MANAGER OF THE BBH, AND IN HER CONTACTS WITH PLAINTIFFS/TENANTS.[4]*

---

[1] WE AGREED TO PLACEMENT, PER MARTIN & EDELSTEIN ON NOV 23, 2005, BUT NO DESTINATION DECIDED AND
THIS IS WHERE WE BELIEVE IT SHOULD GO, PER GOOGLE MAZZUZAH INFORMATION FAXED TO YOU RECENTLY,
IN A NON-COMMON AREA.

[2] TESTIMONY WAS ABOUT SEDER MEAL INVITATION PERMITTED BY BBH IN CUBBYHOLES PER DEPOSITION OF
NOVEMBER 4, 2005.

[3] THIS AGREEMENT WAS MADE BETWEEN EDELSTEIN AND FERRARA AT THE NOV 4, 2005 MEDIATION
CONFERENCE IN THE PRESENCE OF ALL PARTIES AND JUDGE THYNGE.

[4] THIS STIPULATION WAS AGREED TO BY EDELSTEIN AND CORWIN AT THE JANUARY 25, 2005 HEARING TO BE
APART OF AGREEMENT IN LIEU OF AN INJUNCTION FOR MRS ROTAN.



SECOND PAGE, **STIPULATION CHANGES**:

P. 4; LINE 2: *PLEASE CHANGE THE CHECK AMOUNT TO $2,999.00; IN A CASHIERS' CHECK.*
P. 4; LINE 3: *PLEASE ISSUE CHECK ON MARCH 17, 2006, SINCE SETTLEMENT HAS BEEN PUSHED BACK AND WE CANNOT ACCEPT A CHECK EARLIER, DUE TO CIRCUMSTANCES BEYOND OUR CONTROL.*

**\*NOTE: WITH RESPECT TO OMITTING LINE 11, 12, AND 13, P.1 AND THE INSERTION OF THE WORDS "IN-PART" ON LINE 1, P.1, IN THE LAWSUIT STIPULATION, AND REGARDING THE ISSUE OF NEUTRAL ACCEPTED BUT NO RELIGIOUS ITEMS BEING ACCEPTED BY BBH IN THE BBH LOBBY AT CHRISTMAS AND HANAKAH, WE OBJECT TO THE MAGISTRATE'S REPORT ON THIS ONE ISSUE AND SINCE WE PROPOSED THE IDEA ONCE AGAIN IN A RECENT FAX OF JANUARY 29,  2006 TO THE DEFENDANTS, ASKING THEM TO PERMIT  RELIGIOUS ITEMS IN THEIR HOLIDAY SETTING IN THE LOBBY (FOR INSTANCE, PLAINTIFFS' NATIVITY SCENE), AND ACCORDING TO <u>LYNCH V. DONNELLY</u> (WITH CASE LAW QUOTED TO US BY JUDGE SLEET INCLUDING A RECENT SUPPORTIVE DECISION BY JUSTICE O'CONNOR), AND WITH NO AFFIRMATIVE RESPONSE FROM THE DEFENDANTS TO THAT FAX, WE HAVE DECIDED TO SIGN THE SETTLEMENT, <u>ONLY IN PART</u>, (INCLUDING THE ABOVE NECESSARY CHANGES WE CITE ABOVE). WITH THE OMISSION OF THIS NEUTRAL ITEMS BUT NO RELIGIOUS ITEMS IN LOBBY PERMITTED BY BBH AT CHRISTMAS OR HANAKAH) IN THE FINAL STIPULATION,  THIS ISSUE WOULD NOT BE SUBJECT TO THE BAR OF PREJUDICE. WE WISH TO HAVE FURTHER  TALKS WITH DEFENDANTS ON THIS ISSUE WITH AN ACCEPTABLE RESOLUTION. OR LITIGATE THE ISSUE FURTHER. WE WILL TIMELY FILE OUR OBJECTIONS TO THE MAGISTRATE'S REPORT TO THE COURT, IDENTIFYING THIS ONE ISSUE WE OBJECT TO, AND ON WHICH WE DESIRE FURTHER REVIEW.**

### NECESSARY CHANGES TO NOTICE TO ALL RESIDENTS OF B'NAI B'RITH HOUSE

P.1; LINE 6: AMICABLY SETTLED THIS COMPLAINT, *IN PART. (SEE NOTE ABOVE)*
P.1; LINE 14: LITERATURE, *BOOKS, POSTERS, AND DECORATIONS* WILL NOT BE ......
P.1; LINE 15, 16, 17, 18: *OMIT.  (SEE NOTE ABOVE)*
P.1; LINE 19: ANNOUNCEMENT OF *WEEKLY* SERVICES
P.2; LINE 3: RELIGIOUS EVENTS (OMIT *SERVICES*)
P.2; LINE 10, 11, 12: *OMIT.  (SEE NOTE ABOVE)*
P.2; LINE 14:  COMMUNITY, *ESPECIALLY THOSE WITH WHOM WE DISAGREE* (OMIT)[5]
P.2; LINE 18:  ADDITIONALLY, THE FAIR HOUSING LAWS SPECIFICALLY PROHIBIT DISCRIMINATION AND INTIMIDATION OF PEOPLE IN THEIR OWN HOMES.



---

[5] IN YOUR LETTER OF JANUARY 30, 2006, YOU STATED THAT THE CHANGES WE SUGGEST COULD NOT BE MADE BECAUSE THOSE CHANGES DO NOT COMPORT WITH THE TERMS OF THE AGREEMENT WE REACHED ON NOVEMBER 23, 2005 AND JANUARY 25, 2006. THIS LAST PARAGRAPH YOU AUTHORED WAS NEVER AUTHORIZED BY ANY COURT.



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-1000

ASSISTANT SECRETARY FOR CONGRESSIONAL
AND INTERGOVERNMENTAL RELATIONS

FEB - 1 2005



The Honorable Thomas R. Carper
United States Senate
2215 Federal Building
300 South New Street
Dover, DE 19904-6724

Dear Senator Carper:

Thank you for your letter of November 30, 2005, on behalf of your constituents, Isidore and Bonnie Corwin regarding their concerns about holiday and other religious displays in the B'nai Brith Senior Housing, where they rent an apartment. The B'nai Brith Senior Housing project in Claymont, Delaware is assisted with Section 8 funds from the Department of Housing and Urban Development.

First, the Corwins' letter discusses their landlord's earlier requests that they remove a crucifix from their rented apartment and attend mandatory meetings in the building. The Department responded to its matters in a September 10, 2004 letter to you indicating the value of the developing of house rules by owners of subsidized properties but not treating residents differently on the basis of several factors, including religion.

The Corwins now write that a Torah is stored in the building's auditorium and a candle is permanently displayed, draped between services. Conversely, a Roman Catholic resident organization has been permitted to use the auditorium but not allowed to use the storage area or permanently display any of its furnishings. The Department does not prohibit the display of religious symbols in assisted housing. Indeed, HUD regulations at 24 CFR 5.109 explicitly permit religious organizations "to provide services under a HUD program without removing religious art, icons, scriptures, or other religious symbols." However, the Department's implementation of First Amendment principles requires that all religions be treated equally. Under this implementation, if B'nai Brith Senior Housing permits one congregation to maintain a fixed display and utilize on-site storage, it must allow the same opportunity to other resident congregations. Depending on the facts of each case, questions under the Fair Housing Act might also be raised.

Second, the letter states that only one religious congregation is permitted to have its mailing address at the housing site. Assuming that the religious congregation is some entity other than the owner itself, as a matter of fundamental fairness consistent with the Fair Housing Act and the First Amendment, the owner must permit other resident organizations to use the mailing address as well.

Finally, the Corwin's letter indicates that in December, the owner of the building provided lobby displays of various seasonal decorations, including some Jewish religious decorations (including a menorah, mezuzah and a Star of David), some "generic" Christmas decorations (a Christmas tree with a five-point star) and some secular seasonal decorations (a reindeer figure and a snowman) but would not allow residents to display a crèche or other Christian religious objects in the lobby. According to Mr. and Mrs. Corwin, the owner said it would permit a crèche to be displayed in a side room. Again, under the First Amendment, the owner may not differentiate among the congregations based on religion. Once the owner has permitted some religious decorations, it must provide an equal opportunity to display holiday decorations to all residents. Additional information would be needed to determine if a Fair Housing Act issue is raised.

I hope this information is helpful to your constituents. If I can be of further assistance, please let me know.

Sincerely,

Stephen B. Nesmith
Assistant Secretary for Congressional
and Intergovernmental Relations



*CORWIN V. BNAI BRITH SENIOR HOUSING, INC. AND LYNNE ROTAN*
U.S. DISTRICT COURT, WILMINGTON, DELAWARE, C.A. NO. 04-1499,
DATE OBJECTION FILED:  FEBRUARY 2, 2006
*HAND-CARRIED TO CLERK'S OFFICE BY PLAINTIFF BONNIE CORWIN, PRO SE*

## PLAINTIFFS' FILED OBJECTION TO MAGISTRATE'S REPORT

PLAINTIFFS HEREBY FILE THEIR SPECIFIC OBJECTION TO THE MAGISTRATE'S REPORT BETWEEN THE PARTIES IN THE ABOVE NAMED CIVIL ACTION; (SAID MAGISTRATE'S REPORT BEING FORMULATED FROM TWO SEPARATE U.S. DISTRICT COURT CONFERENCES OF NOVEMBER 23, 2005 AND JANUARY 25, 2006); SCHEDULED TO GO INTO ORDER ON FEBRUARY 6, 2006.

PLAINTIFFS OBJECT TO THE MAGISTRATE'S REPORT WITH RESPECT TO SPECIFIC POINTS THAT ARE CLEARLY CONTRARY TO HUD LAW, ACCORDING TO U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT ASSISTANT SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS LETTER OF FEBRUARY 1, 2006 TO U. S. SENATOR THOMAS R. CARPER (ENC.)

THE FEBRUARY 1, 2006 LETTER FROM HUD ASSISTANT SECRETARY FOR CONGRESSIONAL AND INTERGOVERNMENTAL RELATIONS, STEPHEN B. NESMITH, (PLAINTIFFS' COPY RECEIVED ON FEBRUARY 1, 2006, IN RESPONSE TO PLAINTIFFS' CONCERNS (ENC.)), STATES 1a) THAT BNAI BRITH SENIOR HOUSING CAN PROVIDE SERVICES AT THE BBH (THE HUD LETTER DOES NOT CONFINE THE SERVICES TO ONE PARTICULAR ROOM) AND BBH DOES NOT HAVE TO REMOVE ANY OF RELIGIOUS SYMBOLS, ART, ICONS, SCRIPTURES, ETC.; CONTRARY TO THE MAGISTRATE'S REPORT; 1b) WHEN BNAI BRITH SENIOR HOUSING PERMITS ONE CONGREGATION TO MAINTAIN A FIXED DISPLAY....IT MUST ALSO ALLOW THE SAME OPPORTUNITY TO HAVE A FIXED DISPLAY TO OTHER RESIDENTS; CONTRARY TO THE MAGISTRATE'S REPORT WHICH PROVIDES ONLY A ROLL-AWAY OPPORTUNITY DISPLAY FOR THE CATHOLIC FAITH IN THEIR AUDITORIUM; 2) IF BNAI BRITH SENIOR HOUSING ONLY PERMITS ONE RELIGIOUS CONGREGATION TO HAVE ITS MAILING ADDRESS AT THE HOUSING CITE (MACHZIKE HADAS CONGREGATION) PER MAGISTRATE'S REPORT ADOPTED AT THE STATUS HEARING CONFERENCE; IT IS CONTRARY TO THE FEBRUARY 1, 2006 HUD STATEMENT WHERE THE OWNER MUST PERMIT OTHER RESIDENT ORGANIZATIONS TO USE THE MAILING ADDRESS AS WELL; 3) WHEN BNAI BRITH SENIOR HOUSING PROVIDES LOBBY DISPLAYS OF VARIOUS SEASONAL DECORATIONS, INCLUDING SOME JEWISH RELIGIOUS DECORATIONS (MENORAH, MEZUZAH AND A STAR OF DAVID)...(A REINDEER FIGURE AND A SNOWMAN), BUT DOESN'T ALLOW RESIDENTS TO DISPLAY A CRÈCHE OR OTHER CHRISTIAN RELIGIOUS OBJECTS IN THE LOBBY IN DECEMBER PER MAGISTRATE'S REPORT; IT IS CONTRARY TO THE HUD FEBRUARY 1, 2006 STATEMENT WHERE ONCE THE OWNER HAS PERMITTED SOME RELIGIOUS DECORATIONS, IT MUST PROVIDE AN EQUAL OPPORTUNITY TO DISPLAY HOLIDAY DECORATIONS TO ALL RESIDENTS. (ALSO SEE 3RD CIRCUIT COURT OF APPEALS ENCLOSURE.)

PLAINTIFFS, THEREFORE. DESIRE FURTHER REVIEW ON THESE CERTAIN MATTERS FOUND IN THE MAGISTRATE'S REPORT IN FINDINGS OF FACT; AND FURTHER EVIDENCE WITH THESE SPECIFIED FINDINGS (THOMAS V. ARN, 474 U.S.140; 106 S. CT. 466; 88 L. ED 2D 435; 1985 U.S. LEXIS 146; 54 U.S.L.W. 4032; 3 FED. R. SERV. 3D (CALLAGHAN) 436. PLAINTIFFS PRAY THERE IS ENOUGH MERIT IN OUR OBJECTION TO THE MAGISTRATE'S REPORT TO WARRANT CAREFUL CONSIDERATION AND EXPLANATION IN A FURTHER REVIEW OF THESE MATTERS AND AT THE REQUEST OF THE PLAINTIFFS (NORTHERN PIPELINE CO. V. MARATHON PIPE LINE CO., 458 U.S. 50, 77 (1982), QUOTING CROWELL V. BENSON, 285 U.S. 22, 51 (1932).

COPIES SERVED ON TO ALL PARTIES: FEBRUARY 2, 2006                    ENC: 3



OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
DISTRICT OF DELAWARE

Peter T. Dalleo
CLERK OF COURT

February 3, 2006

LOCKBOX 18
844 KING STREET
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801
(302) 573-6170

**TO:    Isidore and Bonnie Corwin**

**RE:    Corwin, et al. v. B'nai B'rith Senior Housing, 04-1499 GMS
Documents sent to the court on February 2, 2006**

As noted below, a document or a courtesy copy has been filed in the above noted case which *does not conform* to one or more of the Administrative Procedures Governing Filing and Service by Electronic Means, or other local rules/practices. **The Court will take no action on the filed documents:**

☐    Copy must be properly bound. Rubber bands and binder clips are not acceptable bindings (e.g. Brief, Appendix).

☐    Courtesy copy not received by next business day.

☐    Redacted copy of sealed document not received within 5 business days.

☐    Pro Hac Vice fee not yet paid.

☐    The attorney account used for filing a document does not agree with the signature (either electronic or /s/) on the document.

☐    Certificate of Service not included with the document.

☐    Discovery document(s) erroneously filed: DI#_____ will be removed from the docket.

☐    7.1.1 statement required with non-dispositive motions was not included with the document.

☐    Request for extension of discovery or trial deadline lacks proof of notification to the client, or lacks the reasons for the request.

☐    Brief exceeds the page limitations _____.

☐    Brief does not include a paginated table of contents/citations.

☐    Diskette or CD exceeds 2.5 megabytes. Please divide document into multiple files that do not exceed the size limitation and resubmit to the Clerk's Office for filing.

☐    Document not in PDF format. Provide disk/CD with document in PDF format.

☐    Document not readable in PDF reader , or ☐ appears to be missing pages.

X    Other: **THIS CASE WAS DISMISSED WITH PREJUDICE AND CLOSED ON JANAURY 26, 2006.  NO FURTHER FILINGS WILL BE ACCEPTED BY THE COURT.**

If there are any questions concerning this matter, please do not hesitate to contact this office. Also, *ECF Tips* on our web site may be of interest to you, viewable at **http:www.ded.uscourts.gov**.

cc:    Assigned Judge

(Rev. 5/05)

Deputy Clerk

FROM :





Founder and President

INTERNATIONAL HEADQUARTERS

U.S.A.

INTERNATIONAL OFFICE
CENTRAL AND EASTERN EUROPE

February 14, 2006

Mrs. Bonnie Corwin
8000 Society Drive
Apt. 608
Claymont, DE  19703-1749

VIA TELEFAX

**Re:  Corwin v. B'nai B'rith Senior Citizen Housing, Inc.**

Dear Mrs. Corwin:

I was glad to learn that your case has been reopened and hope that your are successful in resisting enforcement of the purported settlement, or at least having that settlement reflect the law as set forth in the letter to Sen. Carper from the HUD representative.

As we discussed yesterday, we do not believe the case law supports a claim that a menorah is not a religious symbol. In *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 613 (1989), it was held "[t]he menorah, one must recognize, is a religious symbol: it serves to commemorate the miracle of the oil as described in the Talmud." In her concurrence in the same case, Justice O'Connor wrote, concerning Chanukah, "the menorah is the central religious symbol and ritual object of that religious holiday." *Id.* at 633. While there may be secular aspects to the holiday and symbol, recognition of this does not negate or remove the religious nature of the symbol.

I hope this information helps you in pursuing your claim.

Sincerely,



Staff Attorney



# CERTIFICATE OF SERVICE
# CIVIL ACTION 04-1499 (GS)

THE UNDERSIGNED HERBY CERTIFIES THAT ON FEBRUARY 21, 2006, THE FOREGOING PLAINTIFFS' ANSWER TO DEFENDANTS SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT WAS SERVED IN THE MANNER INDICATED UPON THE FOLLOWING PARTIES AND COUNSEL OF RECORD:

## BY FACSIMILE TO:

ATTORNEY WILKS
BUCHANAN INGERSOLL, P.C.
1007 N. ORANGE ST., SWT 1110
WILMINGTON, DE 19801
FAX 302-428-3996

*ISIDORE AND BONNIE CORWIN, PRO SE*
TELE/FAX: 302-798-5116

## AND COVER SHEET
### TO: *ATTORNEY WILKS*
### FAX NO. 302-428-3996

THE PAGES COMPRISING THIS FACSIMILE TRANSMISSION CONTAIN CONFIDENTIAL INFORMATION FROM ISIDORE AND BONNIE CORWIN. THIS INFORMATION IS INTENDED SOLELY FOR USE BY THE INDIVIDUAL ENTITY NAMED AS THE RECIPIENT HEREOF. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY AT 302-798-5116. THANK YOU.

Pages: INCLUDING CERTIFICATE OF SERVICE/COVER SHEET - 46